ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* HEYSER.

Opinion delivered June 20, 1910.

1.  CARRIERS—INTERSTATE COMMERCE—AUTHORITY OF STATE COURTS.— Courts of the State are authorized to enforce the provision in the "Hepburn Act" of Congress of June 29, 1906, to the effect that the initial carrier in an interstate shipment shall be liable for any loss, damage or injury to the property caused by it or by any carrier to which such property may be delivered. (Page 416.)

2.  SAME—CONSTRUCTION OF HEPBURN ACT.—The provision of the "Hepburn Act" of Congress of June 29, 1906, to the effect that the initial carrier in an interstate shipment shall be liable for any damage or injury to the property transported growing out of the negligence of a connecting carrier, did not create any new right, but merely declared invalid any contract which would exempt it from the liability which it assumed under the common law. (Page 418.)

3.  SAME.—The "Hepburn Act" did not confer exclusive jurisdiction upon the Interstate Commerce Commission or upon the Federal courts to enforce the rights which arise from that law. (Page 418.)

4.  STATUTES—CONSTRUCTION.—In testing the validity of a statute it is the duty of the courts to resolve all doubts in favor of the legislative action. (Page 419.)

5.  CONSTITUTIONAL LAW—LIBERTY OF CONTRACT.—The "Hepburn Act" is not unconstitutional as depriving the initial carrier of the right of liberty of contract or as depriving it of its property without due process of law. (Page 419.)

6.  CARRIERS—NOTICE OF CLAIM OF DAMAGES—SUFFICIENCY.—A provision in a bill of lading that notice of any claim of damages shall be given to the delivering carrier within a prescribed time is complied with where notice of a claim of damages was given in apt time to an agent of the delivering carrier who was its depot manager at the place of destination, and was authorized to receive such complaints. (Page 420.)

Appeal from Benton Circuit Court; *Joseph S. Maples,* Judge; affirmed.

*W. F. Evans* and *B. R. Davidson,* for appellant.

The State court had no jurisdiction of this cause of action. Hepburn Act, § 1. The shipper may select the connecting carrier, and compel the initial carrier to make the through shipment in this way. Hutchinson on Car., § 130; 9 Int. Com. R. 182; 12 *Id.* 418; 50 Neb. 592; 97 S. W. 778. But this was not true at common law. 110 U. S. 667. In the absence of evidence to the contrary, the presumption is that the damage occurred on the line of the delivery carrier. 76 Ark. 589; 74 Ark. 597; 73 Ark. 114; 72 Ark. 502; 100 S. W. 889. The amendment must be read into the original act as if the entire act had been re-enacted. 89 Ark. 598; 73 Ark. 600. The jurisdiction conferred on United States courts by the act is exclusive. 41 Neb. 375; 168 Mo. 652; 33 Cal. 212; 36 Cal. 281; 45 Cal. 90; 6 Blackf. 125; 13 L. R. A. (N. S.) 966; 6 Neb. 423; 65 Tex. 301; 68 Miss. 454. It requires a uniform system applicable to the whole country. 101 U. S. 691; 114 U. S. 196. The United States courts have exclusive jurisdiction under this act. 105 Fed. 785; 74 Fed. 981; 80 Fed. 78; 112 Fed. 826; 142 Fed. 187; 152 Fed. 293; 157 Fed. 857; 165 Fed. 1; 58 Fed. 858; 116 U. S. 104; 95 Ia. 113. The Hepburn Act is unconstitutional in that it deprives defendant of its property without due process of law. 4 Wheat. 235; *Id.* 519; 18 How. 276; 94 U. S. 113; 96 *Id.* 101; 106 *Id.* 196; 124 *Id.* 219; 169 *Id.* 366; 166 *Id.* 226; 17 Wall. 438; 92 U. S. 481; *Id.* 543; 95 *Id.* 294; 103 *Id.* 182; 154 *Id.* 46; 163 *Id.* 85; 148 *Id.* 312; 85 Ark. 422; 174 U. S. 580; 20 Wall. 266; 2 Pet. 657; 159 Fed. 500; 8 Wall. 623; 111 U. S. 746; 90 N. W. 1099; 155 Ill. 98; 98 N. Y. 107; 99 N. Y. 377; 109 N. Y. 389; 46 Atl. 234; 45 S. E. 331; 66 N. E. 1005; 196 U. S. 447; 207 U. S. 463; 10 S. E. 285; 59 Pac. 341; 125 U. S. 188; 127 *Id.* 205; 15 S. W. 87; 44 Conn. 291; 47 N. E. 302.

*Rice & Dickson,* for appellant.

Causes of action in tort and contract may be joined. 85 Ark. 129. The State court may hear the common law cause of action. 83 S. W. 362; 80 Ark. 542. A claim for damage to goods accrues upon the delivery of the goods in a damaged condition. 88 Ark. 594. Appellant is liable for the damages. 83 Ark. 92; 81 Ark. 469. The contract was to deliver at the destination. 74 Ark. 10. A contract limiting liability is void if prohibited by statute. 169 U. S. 133; 24 Ia. 412; 28 L. R.

A. 718; 58 Am. St. R. 430; 95 Ia. 260; 63 N. W. 692; 45 Ia. 470. The State court has jurisdiction. 90 Ark. 308; 89 Ark. 404.

FRAUENTHAL, J. This was an action instituted by William Heyser, the plaintiff below, against the St. Louis & San Francisco Railroad Company to recover the damages which resulted during transportation to a shipment of peaches. It was alleged in the complaint that on August 8, 1907, the plaintiff delivered to the defendant at Rogers in the State of Arkansas two cars of peaches for carriage to Baltimore in the State of Maryland, and that the defendant accepted the property for transportation, and by its written contract agreed to carry same to said latter point and there deliver same to plaintiff. It was alleged that by reason of the negligence in failing to carry the peaches with reasonable dispatch and in failing to properly ice and keep properly iced the refrigerator cars in which they were carried the peaches rotted and decayed; and the plaintiff sought to recover the damages which he thereby sustained.

To this complaint the defendant interposed a demurrer; and thereafter in its answer also set up the grounds of the demurrer as a defense to a recovery. In its answer it pleaded that from the complaint it did not appear that any negligence occurred upon the defendant's line of railroad, and that the plaintiff sought to recover damages to the peaches which resulted by reason of negligence which occurred upon the line of railroad of another and connecting carrier by virtue of the provisions of the act of Congress commonly known as the "Hepburn Act," which was approved June 29, 1906, and which is amendatory of the Interstate Commerce Act approved February 4, 1887; that said act, in so far as it attempts to make the initial carrier liable for the negligence of a connecting carrier, is unconstitutional and invalid; and, if valid, that the State courts have no jurisdiction to enforce the rights thereby created. The defendant also denied the allegations of negligence. It also pleaded that according to the written contract of shipment it was provided that as a condition to a recovery notice of the loss or damage must be given within thirty hours after the arrival of the property at its destination and delivery, and it alleged that such notice was not given.

It appears from the testimony that the defendant owned a line of railroad running through the States of Arkansas and

Missouri, and that it was engaged as a common carrier in interstate commerce. On August 8, 1907, there were delivered to the defendant at Rogers, Arkansas, two cars of peaches to be transported from that point to Baltimore, Maryland. The defendant executed its written receipt or bill of lading for the peaches by which it contracted to transport the property, and therein named the plaintiff as the consignee and the place of destination to be Baltimore, Maryland. In said written receipt or bill of lading it was provided: "No carrier shall be responsible for loss or damage of any freight unless it is proved to have occurred during the time of its transit over the particular carrier's line, and of this notice must be given within thirty hours after the arrival of the same at destination. No carrier shall be responsible for loss or damage to property unless notice of such loss or damage is given to the delivering carrier within thirty hours after delivery. * * * It is further agreed that for all loss or damage occurring in the transit of freight the legal remedy shall be against only the particular carrier in whose custody the said freight may actually be at the time of the happening thereof.'

The evidence tended to prove that when the peaches were loaded in the cars and delivered to defendant at Rogers they were perfectly fresh and sound, and that when they arrived at Baltimore they were injured by dry rot and decay, and were damaged thereby to an amount equal to if not in excess of the sum herein recovered. If the cars had been properly iced and kept properly iced, and the peaches properly transported without unreasonable delay, the testimony tended to prove that they would have reached the plaintiff at Baltimore in a perfectly sound condition.

Immediately upon the arrival of the peaches at Baltimore the plaintiff examined same, and, finding that they were greatly damaged, he at once, and within thirty hours after the arrival, gave notice of his claim of damages to the depot manager or assistant foreman of the delivering carrier, whose duty it was to notify the consignee of the arrival of goods and note any complaints for damage thereto.

Upon the trial of the case a verdict was returned in favor of the plaintiff, and the defendant has appealed from the judgment entered thereon.

By section 20 of the act of Congress approved February 4, 1887, commonly known as the Interstate Commerce Act (U. S. Comp. St. 1901, p. 3169), as amended by the act of Congress approved June 29, 1906, and commonly known as the "Hepburn Act" (U. S. Comp. St. Supp. 1907, p. 909), it is, among other things, provided:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed. Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws."

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment or transcript thereof."

It is urged that the rights thus created spring from an act of Congress relating to an interstate shipment, and not from any law of this State, and on that account such rights can not be recognized or enforced in the courts of this State. It is true that the State can not legislate relative to matters that are the subject of interstate commerce, but this does not prevent the courts of the State from taking cognizance of cases that arise out of such commerce. The citizen of the State is also a citizen of the United States, and is entitled to the rights and the protection which are given him by the Constitution and laws of the United States; and the courts of the State have the power to enforce those rights and grant that protection. In the case of *Robb* v. *Connolly*, 111 U. S. 637, Mr. Justice Harlan said:

"Upon the State courts, equally with the courts of the Union, rests the obligation to guard, enforce and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the State courts are required to take an oath to support that Constitution, and they are bound by it and the laws of the United States made in pursuance thereof. * * * If they fail therein, and withhold or deny rights or immunities secured by the Constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the State in which the question could be decided to this court for final and conclusive determination."

And in the case of *Claflin* v. *Houseman,* 93 U. S. 130, Mr. Justice Bradley said: "The general question whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws and treaties of the United States has been elaborately discussed, both on the bench and in published treatises; * * * but the result of these discussions has, in our judgment, been, as seen in the above cases, to affirm the jurisdiction where it is not excluded by express provision or by incompatibility in its exercise arising from the nature of the particular case. * * * The laws of the United States are laws of the several States, and just as much binding on the citizens and courts thereof as State laws are. * * * Legal or equitable rights acquired under either system may be enforced in any court of either sovereignty competent to hear such kind of rights and not restrained by its Constitution in the exercise of such jurisdiction." *Teal* v. *Felton,* 12 How. (U. S.) 292; *Dennick* v. *Railroad Company,* 103 U. S. 11; *Defiance Water Co.* v. *Defiance,* 191 U. S. 194.

There are many instances in which rights growing out of or created by acts of Congress have been recognized and enforced in the courts of this State and the courts of other States. *York* v. *St. Louis, I. M. & S. Ry. Co.,* 86 Ark. 244; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281; *Smeltzer* v. *St. Louis & S. F. Rd. Co.,* 158 Fed. 649; *Watson* v. *St. Louis, I. M. & S. Ry. Co.,* 169 Fed. 942; *Schlemmer* v. *Buffalo, R. & P. Ry. Co.,* 205 U. S. 1; *Holland* v. *Chicago, R. I. & P. Ry. Co.,* 123 S. W. 987; *Southern Pac. Co.* v. *Crenshaw,* 63 S. E. 865.

It is further urged that the above provision of the "Hepburn Act" making the initial carrier liable for any damage or injury to the property transported growing out of the negligence of the connecting carrier is a new right which this statute has created, and that the act of Congress has prescribed the remedy for its enforcement, and that such remedy is exclusive. It is contended that by sections 8 and 9 of the Interstate Commerce Act, approved February 4, 1887, exclusive jurisdiction is conferred upon the Interstate Commerce Commission and upon the Federal courts for the enforcement of the rights thus created. As is said by Judge Rogers in the case of *Smeltzer* v. *St. Louis & S. F. Rd. Co.,* 168 Fed. 420: "The very language used makes it clear that those sections have no application to such an action as this." The provisions of those sections declare a liability for damages which result where the common carrier "shall do, cause to be done or permit to be done, any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required." The action herein instituted is based upon the negligence which occurred during the transportation of the property, and not upon anything that is required to be done or prohibited from being done by the act. By its written contract of shipment the defendant in this case had agreed to carry the peaches from Rogers, Ark., to Baltimore, Md. Under the common law, and independent of any statutory liability, it rendered itself liable for any injury to the goods which arose through its own negligence or by reason of the negligence of any connecting carrier upon any portion of the route over which the property was transported, unless it expressly exempted itself from liability by contract. *St. Louis S. W. Ry. Co.* v. *Wallace,* 90 Ark. 138.

It attempted to do this in the written receipt or bill of lading which it executed. The Hepburn Act simply struck down that exemption, and left the liability of the defendant as a carrier as it existed at common law. It created no new right and imposed no new duty, but declared invalid any contract which would exempt it from the liability which under the common law it assumed. But, if we are mistaken in this view of the act, then we are of opinion that Congress did not give by this enactment the exclusive jurisdiction to the Interstate Commerce

Commission or to the Federal courts to enforce the rights which arise from that law. *Smeltzer* v. *St. Louis & S. F. Rd. Co.,* 168 Fed. 420; *Southern Pac. Co.* v. *Crenshaw,* 63 S. E. 865; *Holland* v. *Chicago, R. I. & P. Ry. Co.,* 123 S. W. 987. See also *Midland Valley Rd. Co.* v. *Hoffman Coal Co.,* 91 Ark. 180;

It is urged that this act of Congress is unconstitutional because it deprives the initial carrier of the right of the liberty of contract, and because it deprives it of its property without due process of law. But the right of liberty of contract is not absolute and universal, and is subject to legislative restrictions which are enacted in the exercise of the power to protect the safety, health and welfare of the people.

In the case of *Frisbie* v. *United States,* 157 U. S. 165, it is said: "While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts as well as all individuals from some contracts. It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations except for necessaries of existence; to the common carrier the power to make any contract releasing himself from negligence, and, indeed, may restrain all engaged in any employment from any contract in the course of that employment which is against public policy."

The power to regulate commerce is conferred upon Congress by the Constitution of the United States, and such power is plenary, and may be exercised to the utmost extent, and has no limitation except that prescribed by the Constitution.

The character of the regulations that shall be adopted in the matters of commerce must necessarily be left largely to the discretion of Congress, to which branch of the government the power to make such regulations is confided. In testing the validity of its enactments it is the duty of the courts to resolve all doubts in favor of the legislative action. *Legal Tender Cases,* 12 Wall. 531; *Trade Mark Cases,* 100 U. S. 96; *Fletcher* v. *Peck,* 6 Cranch 87; *Bacon* v. *Walker,* 204 U. S. 311.

Cases involving rights growing out of the above clause of the "Hepburn Act" have been several times before this court, and in each case its validity has been sustained. *St. Louis S. W.*

*Ry. Co.* v. *Grayson,* 89 Ark. 154; *Kansas City So. Ry. Co.* v. *Carl,* 91 Ark. 97.

Its constitutionality has been upheld in an able and well considered opinion delivered by Judge Rogers in the case of *Smeltzer* v. *St. Louis & S. F. Rd. Co.,* 158 Fed. 649. Its validity has also been upheld in the case of *Southern Pac. Co.* v. *Crenshaw,* 63 S. E. 865. And we are of opinion that the enactment of the above provision of the "Hepburn Act" was within the due exercise of the legislative power conferred upon Congress by the Constitution.

It is contended that notice of the claim of damages was not given in compliance with the above condition of the bill of lading requiring such notice. This provision of the bill of lading does not designate to what officer or agent such notice shall be given; it only provides that the notice shall be given to the delivering carrier within a prescribed time. The delivering carrier was a corporation, which could only receive notice through one of its agents. Within the prescribed time the plaintiff gave notice of the claim of damage to an agent of the delivering carrier who was its depot manager at the place of destination, and to whom such complaints were customarily made. This agent appeared as a witness on behalf of the defendant, and testified that he was authorized by the delivering carrier to notify consignees of the arrival of the property and to receive and note all complaints made relative thereto at the time of arrival. Under these circumstances we think that notice to this agent was notice to the delivering carrier, and that the plaintiff complied with this condition of the contract. We are also of the opinion that the evidence adduced at the trial was sufficient to sustain the liability of the defendant for the damages to the peaches and for the amount of the recovery therefor.

The judgment is accordingly affirmed.

BATTLE, J., not participating.