# THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* HAYES ET AL.

[No. 21,616.    Filed June 5, 1913.    Rehearing denied January 14, 1914.]

1. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrers to Answer.*—Prior to the act of 1905 (Acts 1905 p. 58, §3918 *et seq.* Burns 1908), relating to actions against common carriers for failure to safely transport and deliver property received by them, the rule that anything may be shown under the general denial that will disprove what the plaintiff is bound to show, was applicable to actions against carriers upon contracts of shipment, and since the act of 1905, as applied to interstate shipments, has been superseded by the Interstate Commerce Act, the sustaining of demurrers to certain paragraphs of answer, in an action for damages to an interstate shipment of mules, was harmless, where the only facts disclosed by such answers and not shown by the contract sued on were that defendant's line did not extend to the destination of shipment, and that one from whom plaintiff purchased, routed the shipment after it left defendant's line, since such facts, if matters of defense, were provable under the general denial. p. 92.

2. CARRIERS.—*Constitutional Law.*—*Connecting Carriers.*—*Liability of Initial Carrier.*—Section 6 of the Interstate Commerce Act, providing for the filing of joint rate schedules where a through route and joint rate have been established, and the filing of separately established rates applying to through transportation where no joint rate over a joint route has been established, and

§20 making the initial carrier liable for damage occurring on the line of a connecting carrier, are not unconstitutional as abridging the freedom to contract, or as operating to take property without due process of law, since under §6 there can be no through shipment required unless there is a rate fixed over the lines of each carrier, which presupposes a contractual arrangement between the carriers in effect making the connecting carrier the agent of the initial carrier, hence the shipper's right of routing in the absence of an established through rate cannot affect the contractual rights of the carrier, and the liability imposed by §20 is based upon the presumption as to such contract and agency. pp. 96, 98, 106.

3. CONSTITUTIONAL LAW.—*Interstate Commerce Act.*—*Determination of Validity.*—*Moot Questions.*—In an action involving a through shipment under a contract between carriers fixing through rates, a carrier cannot question the constitutionality of the Interstate Commerce Act as applied to a case of routing by the shipper under the local rates of each connecting carrier; that being a moot question. p. 98.

4. CARRIERS.—*Constitutional Law.*—*Connecting Carriers.*—*Liability of Initial Carrier.*—Section 20 of the Interstate Commerce Act, imposing liability on initial carriers for loss or damage to shipments upon the lines of connecting carriers, but permitting them to recover from the connecting carrier responsible for such loss or damage, is not unconstitutional on the ground that it imposes the cost, expenses and attorney fees incurred in defending a case, or ascertaining where and how the loss occurred, upon the initial carrier, since by vouching in the carrier responsible for the loss, or giving it notice to defend, the party responsible for the loss may be determined and the expense transferred to it. p. 99.

5. CARRIERS.—*Interstate Shipments.*—*Liability for Injury or Loss.*—*Act of God or Public Enemy.*—Under §20 of the Interstate Commerce Act, providing that common carriers receiving property for transportation to a point in another state shall be liable for any loss or injury thereto caused by it, or occurring upon the line of any connecting carrier, carriers are not liable for loss or injury resulting from an act of God or the public enemy. p. 99.

6. APPEAL.—*Review.*—*Refusal of Instructions.* — *Presumptions.*— Although requested instructions relative to a carrier's liability for injury to property under an interstate shipment were correct as controlled by the contract alone, the court must assume, in the absence of the evidence, that they were not applicable, that they were properly refused, and that those given were applicable and fully covered the issues. p. 101.

7. CARRIERS.—*Carriage of Live Stock.*—*Actions.*—*Instructions.*—In an action for damages to a shipment of mules, where the contract of shipment required claims for damages to be made within five

days after the removal of the stock from the cars, an instruction that the failure to file such claim within five days relieved defendant from liability was properly refused as being too narrow, and the question was correctly covered by the court's instruction pointing out that if an opportunity to inspect the mules when they were removed from the car was refused by the carrier, the five days' period for filing the claim would not begin to run at the time of unloading.  p. 102.

8.  CARRIERS.—*Carriage of Live Stock.—Actions. — Instructions.*—Where the court instructed as to the proper elements of evidence to be considered in determining the question of the reasonableness of the time fixed for filing claim for damages to a shipment, the objection that what is reasonable time is a question for the jury is not available, since the instructions do not attempt to determine that question.  p. 102.

9.  APPEAL.—*Review.—Instructions.*—Alleged error in giving an instruction is not available where no objection thereto is pointed out.  p. 103.

10.  CARRIERS.—*Carriage of Live Stock.—Food.—Water and Rest.—Statutory Provisions.*—The act of Congress, known as the Twenty-eight Hour Law, is for the prevention of cruelty to animals, and is not primarily for the benefit of shippers of live stock, but is restrictive of their rights, and cannot be waived by them except in the manner and upon the contingencies provided in the act.  p. 104.

11.  CARRIERS. — *Interstate Shipments. — Rates. — Knowledge of Shipper.*—The shipper of an interstate shipment of mules was bound to know that a through shipment could not be undertaken in the absence of a through rate, that there could be at least two rates, applying to shipments under limited and unlimited liability contracts, and that the posting of such rates was not essential, so that the admission of evidence that the shipper was not informed as to the existence of two rates was improper.  p. 104.

12.  APPEAL.—*Questions Reviewable.—Admission of Evidence.*—Objection to the admission of evidence is unavailing on appeal where the grounds of objection are not stated, unless upon its face the evidence was improper under any circumstances.  p. 105.

13.  CARRIERS.—*Carriage of Live Stock. — Actions. — Evidence. —* Where the carrier's agent was not authorized to accept shipment under the common law liability, and the shipper was thereby deprived of opportunity to ship, except under a contract of limited liability, such contract is void.  p. 105.

14.  APPEAL.—*Briefs.—Sufficiency.*—A so-called recital of the evidence contained in appellant's brief, which is merely the conclusion of appellant as to what the evidence shows, is not a sufficient compliance with the rule requiring a condensed recital of the evidence.  p. 107.

From Decatur Circuit Court; *Marshall Hacker,* Judge.

Action by Cephas S. Hayes and others against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Davison Wilson, Carter & Morrison* and *Isaac Carter,* for appellant.

*John E. Osborn,* for appellees.

MYERS, J.—This was an action by appellees against appellant for damages alleged to have been sustained upon shipment of a carload of mules from Greensburgh, Indiana, to Atlanta, Georgia, January 14, 1907. The complaint is in four paragraphs. The first and third count upon a common-law liability, while the second and fourth count upon a shipment under a written contract made an exhibit of each of those paragraphs. No question is presented as to the complaint.

Appellant filed answer in five paragraphs, four of which were affirmative, the first being in general denial, and to the fourth and fifth paragraphs demurrers for want of facts were sustained. The second paragraph of answer counts upon the same contract as the second and fourth paragraphs of complaint, a general bill of lading for the shipment of the mules from Greensburgh, Indiana, to Atlanta, Georgia, by one Hamilton who was made a defendant and who filed a disclaimer. It is alleged in each paragraph of the complaint that immediately after the bill of lading was issued to Hamilton as consignee, he had sold the mules to appellees before they were injured, though it is alleged in each of the two paragraphs counting upon the written contract, that Hamilton delivered the mules to appellant for, and consigned to appellees; and in the contract itself is a clause wherein appellees by name, acknowledge their option to ship on a limited liability contract, in which respect the copy of the contract, set out in appellant's brief, does not

correspond to the copy in the record, or the copy relied on by appellant. The exhibit with the complaint sets out a written memorandum signed by Hamilton, directing the delivery of the mules to appellees; this memorandum is not set out as a part of the exhibit filed by appellant. There is also a discrepancy between the contract as set out by appellees and the one counted on by appellant, in that, in the copy set out by the latter with its answer, there is a copy of assumption by Hamilton as man in charge, of all risk of injury in transportation, which is omitted from appellees' exhibit.

The basis of the defense under the second paragraph of answer is, (1) that the contract was fair and freely entered into by Hamilton after he had been given a *bona fide* and full opportunity to ship at a fair rate without limitation of the common-law liability, by which he secured a less rate, alleging it to be the kind of contract usually made, and the consideration, the agreement to transport according to the terms of the contract, and that the latter was reasonable; (2) that by the terms of the contract, a verified claim for damages was required to be made within five days from the time the stock was removed from the cars, and that such claim was not filed; (3) that the damages arose from overloading, crowding, kicking, suffocation and fright, which were released by the terms of the contract. The third paragraph is the same as the second, except that it omits any allegations of damages from "overloading, crowding, kicking, suffocation and fright," but avers that appellant did not undertake to carry beyond Cincinnati. The fourth paragraph is the same as the third, except that it alleges that it undertook to carry only to Cincinnati, and there deliver to a connecting carrier, known by the terms of the contract as the Queen and Crescent Line; that appellant had no line beyond Cincinnati; the other line did connect Atlanta and Cincinnati; that it delivered the stock in good condition to the connecting carrier; that no loss

or injury occurred while in appellant's possession, and that they were afterward injured, if at all; that appellant did not undertake or contract for the negligence of another carrier; that the clause of the Interstate Commerce Act attempting to make it responsible is invalid, because, (1) it deprives appellant of its property without due process of law, and (2) it attempts to take its private property from it without its consent, and give it to another. The fifth paragraph is the same as the fourth except that it alleges that "Hamilton selected the route over and by which said mules were to be shipped after they left defendant's road." The errors relied upon are the action of the court in sustaining demurrers to the fourth and fifth paragraphs of answer.

It had long been the settled rule prior to the going into effect of the act of 1905 (Acts 1905 p. 58, §3918 *et seq.* Burns 1908), that where a complaint, such as the

1. first and third paragraphs, counts upon an oral contract of shipment of property, it may be shown under the general denial that the shipment was under a written contract, and thus defeat a recovery. *Snow* v. *Indiana, etc., R. Co.* (1886), 109 Ind. 422, 426, 9 N. E. 702; *Bartlett* v. *Pittsburgh, etc., R. Co.* (1883), 94 Ind. 281; *Hall* v. *Pennsylvania Co.* (1883), 90 Ind. 459; *Lake Shore, etc., R. Co.* v. *Bennett* (1883), 89 Ind. 457, 471; *Jeffersonville, etc., R. Co.* v. *Worland* (1875), 50 Ind. 339; *Indianapolis, etc., R. Co.* v. *Remmy* (1859), 13 Ind. 518; *Pennsylvania Co.* v. *Walker* (1902), 29 Ind. App. 285, 64 N. E. 473; *Parrill* v *Cleveland, etc., R. Co.* (1899), 23 Ind. App. 638, 55 N. E. 1026; *Stewart* v. *Cleveland, etc., R. Co.* (1898), 21 Ind. App. 218, 226, 52 N. E. 89; *Sanders* v. *Hartge* (1896), 17 Ind. App. 243, 56 N. E. 604; *Baltimore, etc., R. Co.* v. *Ragsdale* (1895), 14 Ind. App. 406, 42 N. E. 1106; *Indianapolis, etc., R. Co.* v. *Forsythe* (1892), 4 Ind. App. 326, 29 N. E. 1138. This was only an application of the rule that where an oral or implied contract is declared on, there can

be no recovery upon a written contract, and whenever a written contract is sued on, recovery cannot be had upon an oral or implied contract. *Paris* v. *Strong* (1875), 51 Ind. 339; *Pennsylvania Co.* v. *Walker, supra; Sanders* v. *Hartge, supra;* 4 Ency. Pl. and Pr. 922-927. We have recently held the act of 1905 superseded by the Interstate Commerce Act, as applied to interstate shipments. *Wabash R. Co.* v. *Priddy* (1913), 179 Ind. 483, 101 N. E. 724. As to the facts set up in the fourth paragraph, they were such, and such only as the contract itself disclosed, except the fact that appellant had no line of its own from Cincinnati to Atlanta. As to the fifth paragraph, the only facts alleged which were not disclosed by the contract itself were that appellant's line did not reach Atlanta, and that Hamilton routed the shipment after it left appellant's line but, with the contract in evidence, these facts could have been shown under it, and under the general denial, if they constituted a defense, under the rule that anything may be shown under that plea which will disprove what a plaintiff is bound to show, and if under the contract there was no liability, under those facts, a defense would be made out, so that there could be no reversible error in sustaining the demurrers to those answers.

Upon the motion for a new trial, complaint is made of the giving of instructions Nos. 2, 3 and 4, requested by appellees. It is conceded by appellant that these instructions present the one question whether the Interstate Commerce Act in fixing liability upon the primary carrier, violates the 5th and 14th amendments to the Federal Constitution, as depriving appellant of its property without due process of law. Instruction No. 2 is to the effect that as the property involved in this suit was transported from a point in one state to a point in another state, this would constitute interstate commerce, and the liability and duty of the railroad company in regard to such shipment is regulated by the law of the United States, and that the

act of Congress is as follows: (Sets out the Carmack amendment, §20, U. S. Comp. Stat. Supp. 1911 p. 1307). Instruction No. 3 informs the jury that if it finds that appellant received the mules for shipment from one state to another, it was liable for any loss, damage or injury caused by appellant or by any other carrier over whose line the shipment passed, whether such loss, damage or injury occurred on appellant's line, or on the line of some other carrier between the two points. Instruction No. 4 defines the duties prescribed by the act of Congress in regard to common carriers feeding, watering and resting animals in shipment, and quotes §1 Acts of Congress, June 29, 1906, U. S. Comp. Stat. Supp. 1911 p. 1341.

The objections urged to these instructions involve the validity of the act, the grounds of objection being stated thus, with reference to all three, as raising the same question: (1) because it assumes to make the appellant, as the initial carrier, liable for the wrongful act or default of the connecting carriers which were not the agents of appellant, and over which the appellant had no control; (2) because it assumes to make the appellant, as the initial carrier, liable for a loss occasioned by the connecting carriers, and against which loss the appellant expressly contracted, it should not be liable; (3) because it assumes to make the appellant, as the initial carrier, liable for a loss occasioned by the act of God or the public enemy, while the property was in the possession and control of connecting carriers; (4) because it assumes to make the appellant, as the initial carrier, liable for a loss occasioned by a connecting carrier, and assumes to give the appellant the right to recover from such connecting carrier the amount of the judgment obtained by the appellees against the appellant; but if the connecting carrier is insolvent, or is permitted to show that the loss was occasioned by the act of God or the public enemy, the appellant cannot recover against it, and is deprived of its property, to the extent of the judgment obtained against it

by the appellees; (5) because it assumes to make the con-
necting carrier liable to pay the judgment obtained against
the appellant, as initial carrier, and thus attempts to bind
the connecting carrier by a judgment to which it is not a
party, and to take from it the right to show that the property
was not injured while in its possession, or under its control,
or that it was injured while in its possession or under it con-
trol, by the act of God or the public enemy; (6) because it
assumes to compel the appellant, as the initial carrier, to
enter into a contract, or to assume a liability against its
will, and concerning a matter that is not a regulation of
commerce between states; (7) because it assumes to allow
the shipper to select the connecting carrier, and to compel
the appellant, as the initial carrier, to ship the property
over the road of such connecting carrier, and to become
responsible for the acts of the shipper's agent; (8) because
it assumes to compel appellant, as the initial carrier, to
pay to the appellees the judgment rendered in their favor,
though the damage to the property was done by a connect-
ing carrier, and in doing so necessarily takes from appel-
lant all money necessarily expended by it in paying costs
made by it, and in employing counsel to defend it against
the suit brought by the appellees against it; (9) because
it assumes to make the appellant, as the initial carrier,
responsible for loss to property while the same was in the
possession of a connecting carrier, or under its control.  If
the property passes over the lines of two or more connecting
carriers, the initial carrier has no means of knowing which
carrier injured the property, and will be compelled to
engage in expensive litigation to ascertain, according to
the provisions of this act, which one is liable.  And if it is
found in such litigation, that the injury for which the initial
carrier must respond was occasioned by two or more con-
necting carriers, the provisions of the act which provides
that the initial carrier shall recover from the connecting
carrier the amount of the judgment obtained against the

initial carrier, are necessarily futile, and furnish no relief to the innocent initial carrier.

It may be conceded that these propositions are forcibly put, and challenge the construction of the act, so that the question resolves itself into an inquiry into the acts 2. of Congress. The sections of the Interstate Commerce Act which are involved, as the claim arose in 1907, are §§6, 20, U. S. Comp. Stat. Supp. 1911 pp. 1289, 1307. Section 6 of the act requires that each common carrier shall file with the Interstate Commerce Commission and print and keep open to public inspection, "schedules showing all the rates, fares, and charges for transportation between different points on its own route and points on the route of any other carrier * * * when a through rate and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route, shall file, print and keep open to public inspection * * * the separately established rates, fares and charges applied to the through transportation. * * * The names of the several carriers which are parties to any joint tariff specified therein, and each of the parties thereto, other than the one filing the same, shall file with the Commission, such evidence of the concurrence therein or acceptance thereof: * * * No carrier unless otherwise provided by this Act, shall engage or participate in the transportation of passengers or property, * * * unless the rates, fares, and charges upon which the same are transported, have been filed in accordance with the provisions of this act." In *Southern R. Co.* v. *Reid* (1911), 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257, it was held under this section, that no through shipment could be required, and no property could be required to be received for through shipment, until the rate had been established. See, also, *Southern R. Co.* v. *Burlington Lumber Co.* (1912), 225 U. S. 99, 32 Sup. Ct. 657, 56 L. Ed. 1001. Under this section as we construe it, in the light of *Southern R. Co.* v. *Reid, supra,* as to the

clause there under review that there can be no through shipment lawfully required, unless a rate has been established, filed and published, there can be no through shipment required even where there are two or more competing lines in some portion of the route, unless there is a rate fixed over each, so that the shipper in routing it by one or the other, is, when the shipment is made, as fully informed as is the carrier, as to the rate, and as the rate in such case must be made by agreement between the carriers, the carrier necessarily chooses his agent in advance, and is in no situation to deny that agency. If a through rate has not been fixed, then the shipper in exercising his common-law right of routing, cannot make a through shipment, but must make shipment according to the local rates of the respective lines over which the carriage may be undertaken. The right of routing therefore cannot affect the contractual rights of the carrier, for if it has not contracted with a connecting carrier, it cannot be required to accept for through carriage, and if it does accept for through carriage, it does so under contract with the connecting carrier. So the right of through routing is purely contractual on the part of the carrier, except as under the act of 1906 there is a power in the commission to order a through routing, to the exclusion of another route. *Central Stock Yards Co. v. Louisville, etc., R. Co.* (1903), 192 U. S. 568, 24 Sup. Ct. 339, 48 L. Ed. 565; *Central Stock Yards Co. v. Louisville, etc., R. Co.* (1902), 118 Fed. 113, 55 C. C. A. 63, 63 L. R. A. 213; *Covington Stock Yards Co. v. Keith* (1891), 139 U. S. 128, 35 L. Ed. 73; *Butchers, etc., Stock Yards Co. v. Louisville, etc., R. Co.* (1895), 67 Fed. 35, 14 C. C. A. 290. But so long as through shipments can be required only upon agreed and published rates which the carriers tender to the public, there can be no hardship in the shipper routing the carriage, under §6 as amended in 1906, *supra,* irrespective of §15, as amended in 1910 (U. S. Comp. Stat.

Supp. 1911 p. 1297). The case before us being one of through shipment, appellant cannot be heard to raise a moot question of constitutionality, as applied to a case of routing by the shipper, where it is not a through shipment, but under the local rates of each connecting carrier. In other words, where a through shipment is undertaken, it can be only under a contract as to the rates, so that each succeeding carrier becomes the agent of the initial carrier, and liability is grounded on that agency and contract. So when we come to the primary liability clause of §20, *supra*, it is based upon the presumed fact and the law, that a contract has been made between the carriers, because carriage cannot otherwise be undertaken, and it will be presumed that such agreement has been made, and the question of liability under those conditions has been determined adversely to appellant's contention, on the ground of agency. *Galveston, etc., R. Co.* v. *Wallace* (1912), 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516; *Atlantic, etc., R. Co.* v. *Riverside Mills* (1910), 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; *Pittsburgh, etc., R. Co.* v. *Mitchell* (1911), 175 Ind. 196, 211, 91 N. E. 735, 93 N. E. 996; *Interstate Commerce Com.* v. *Louisville, etc., R. Co.* (1902), 118 Fed. 613; *United States, ex rel.* v. *Seaboard R. Co.* (1897), 82 Fed. 563. That the primary liability clause does not offend the due process of law clause of the Constitution is settled. *Pittsburgh, etc., R. Co.* v. *Mitchell, supra; Riverside Mills* v. *Atlantic, etc., R. Co.,* (1909), 168 Fed. 987; *Smeltzer* v. *St. Louis, etc., R. Co.* (1908), 158 Fed. 649; *Galveston, etc., R. Co.* v. *Crow* (1909), 117 S. W. (Tex. Civ. App.) 170; *Galveston, etc., R. Co.* v. *Piper* (1909), 52 Tex. Civ. App. 568, 115 S. W. 107. The questions of due process of law, taking private property, and forcing an insolvent intermediate carrier upon the initial carrier, and making a new contract for the initial carrier, are all removed by the mere fact of it having itself made the contract as a condition of

carriage. Upon those questions see, *Galveston, etc., R. Co. v. Johnson* (1911), 133 S. W. (Tex.) 725; *St. Louis, etc., R. Co. v. Heyser* (1910), 95 Ark. 412, Ann. Cas. 1912 A 610, 130 S. W. 562; *Missouri, etc., R. Co. v. Harriman Bros.* (1910), 128 S. W. (Tex. Civ. App.) 932; *Louisville, etc., R. Co. v. Scott* (1909), 133 Ky. 724, 118 S. W. 990, 19 Ann. Cas. 392. Furthermore, if, as is alleged, appellees routed the shipment, we know that under the law, having undertaken a through shipment, it could only be because of a through rate, whether routed by appellees or appellant, over the route selected, for we are bound to assume that it was done as the law requires, under a contract as to rates and carriage between the carriers. So also as to the question of costs, expenses and attorney fees incurred by appellant in defending the case, or ascertaining where and how the loss occurred, we are bound to assume that all such matters were the subject of contract between them, if it was necessary that it be so, in order to protect the one against the other, but aside from the question of contract, if one company delivers in good condition, then upon notice to defend, or by vouching in the carrier or carriers responsible for the loss, or each in turn vouching in its successor in carriage, the expense is transferred to the party responsible for the loss, and at one and the same time fixes the amount of the loss, and the party responsible for it. Nor is there any ground for the position taken, that the carrier is made responsible for the act of God or the public enemy, or for the negligence of another, because by vouching in, or notice, responsibility is fixed where it belongs, and nonliability from the act of God or the public enemy is a defense to any carrier, and as to negligence, the carrier responsible for the loss is the party which must respond.

Objection is made to the refusal to give requested instructions Nos. 5, 6, 7, 8 and 9, upon the same grounds, that is, that the carrier had a right to limit its common-law liability,

and therefore to limit the time within which claims for loss should be filed. The instructions requested and refused travel upon the theory, (1) that as the shipper voluntarily decided to ship at a reduced rate, and a limited liability, and it was so recited in the contract of shipment, the recital was evidence of a consideration for the contract, and of its reasonableness, and that it was fairly entered into, and hence the agreement to file any claim for loss within five days from the time of unloading must be complied with; (2) that if the shipper shipped under a limited liability contract, in consideration of a less rate, and that he could have shipped without limitation of liability at a reasonable rate, and the carrier had publicly given notice to that effect, and he signed the contract without objection, that as a matter of law he was given a *bona fide* and full opportunity to ship, and the verdict should be for defendant on the issue of a *bona fide* opportunity to ship at a fair and reasonable rate, without limitation of liability.

Instruction No. 6 requested by appellant instructs, that if under the provision of the written contract of shipment reciting that the shipper had the option of shipping at a higher rate, according to the tariff rates applicable to the carriage, and thereby securing the liability for the stock, he had voluntarily decided to ship at the lower rate, and had so acknowledged in writing, then such contract furnishes evidence of being based upon a sufficient consideration, and was fairly entered into, after a *bona fide* and full opportunity to ship at a reasonable rate without limitation of liability, and should be considered as establishing those facts, until overthrown by evidence, and if the claim was not made as provided in the contract within five days from delivery, there could be no recovery. The seventh requested instruction is to the effect that if under the contract in evidence appellees received the lesser of two rates, in consideration of limitation of liability, it must be deemed to have been upon a sufficient consideration, and upon the

question of the consideration being sufficient, the jury should find for the defendant. The eighth requested instruction was to the point that the provision of the contract of shipment, that verified claim for shipment should be made within five days of delivery of the mules, was a reasonable provision, and upon this allegation the jury should find for defendant. The ninth requested instruction was to the effect that, if the jury found that appellant would have shipped without limitation, and charged more therefor, and appellant had for a long time been, and was shipping, and would have shipped either with or without limitation, as the shipper desired, and had given notice to that effect, and that the rate for unlimited liability was fair and reasonable, and the contract was executed without objection, that the contract was executed after appellees had been given a *bona fide* and fair opportunity to ship at a fair and reasonable rate without limitation, the jury must find for the defendant on this allegation of the answer. The instruction further directs the jury, that in determining the rate that would have been charged without limitation of liability, they might take into consideration the legal obligation of carriers, under unlimited contracts, describing some of them, and the advantages and disadvantages to the parties under an unlimited, and a limited liability, considered with respect to the obligations of the carrier on the one hand, and the added cost of carriage on the other. By appellant's instruction No. 12 the jury was instructed that appellees were bound to know that they could ship without limitation of liability, and by appellees' instruction No. 11 that there could be no other legal rates than those filed with the commission. Standing as controlled by the contract alone, these instructions were each undoubtedly correct under the rule as declared in the Priddy case, but in the absence of the evidence being set out so that we might determine their applicability, we are bound to assume that they were not applicable, and that instructions Nos. 6

and 7 given by the court on its own motion, and Nos. 9 and 11 given at appellees' request, and Nos. 10, 11 and 12 given at appellant's request, fully covered and were applicable to the facts, for the reason that the instructions given cover all the points in the sixth, seventh, eighth and ninth requested instructions, except that the contract furnished *prima facie*, instead of conclusive evidence of being entered into upon a sufficient consideration after a fair and *bona fide* opportunity to ship at a reasonable rate without limitation, and they add as to the question of filing the claim, that if the claim was not filed within five days from removal from the car, plaintiff could not recover, and if the opportunity to inspect when removed from the car, was prevented by the fault of the shipper, and not by the fault of the defendant, then the five days' period for presenting the claim would begin to run from the time the mules were removed from the car. Appellant cannot complain of these instructions as failing to cover the ground of its requested instructions, and we must assume they were applicable to the evidence.

Objection is also raised as to the failure to give instruction No. 5 requested by appellant, and in giving Nos. 6 and 8 given at appellees' request. Instruction No. 5. went

7. to the question of nonliability for failure to file claim for damages within five days without any exception, and was too broad. The question was properly presented under the court's instructions Nos. 6 and 7, and appellees' requested and given instruction No. 9, in which it is pointed out that if the opportunity to inspect the mules when they were removed from the car was refused by the carrier, then the five days' period for filing claim would not begin to run when the mules were unloaded.

Instruction No. 6 was directed to the question of the contract being fully and fairly entered into upon good

8. consideration, and the time fixed for filing claim reasonable, and instruction No. 8, to the question

of negligence in watering, resting and feeding, based upon the Interstate Commerce Act of June 29, 1906. The instructions cover the questions as to the proper elements of evidence to be considered in determining those questions. The specific objection is, that what is a reasonable time is a question for the jury. The proposition is correct, but is unavailable here for two reasons: (1) because appellant had requested an instruction that the time fixed in the contract was reasonable, and under that request, while the court did not give that instruction as requested, it did give an instruction to the precise point, and then gave an instruction covering the question of reasonableness of time, in view of the claim of appellees of being prevented from inspecting the mules when unloaded, and also gave instruction No. 6 upon the question of what might properly be considered by the jury as shown by the evidence, in determining that question, and no complaint is made of the elements stated. Instruction No. 8 goes to the question of the evidence proper to be considered by the jury in determining whether the animals had been properly unloaded, rested, fed and watered, and no objection is pointed out as to the impropriety of that instruction; (2) the instructions do not attempt to determine any of those questions for the jury, but simply to inform it of proper matters which might be considered in determining the questions.

Objection is raised as to some items of evidence claimed to have been improperly admitted over objection, and set out in the motion for a new trial, but no such evidence is set out in the recital of the evidence or even referred to. The only question which could by any possibility be presented is one under which it might be claimed that standing alone, a question was improper which sought to learn whether the shipper had been notified of there being more than one rate, with differing liabilities. The contract limits liability to $100 for each mule, and waives damages from

overloading, crowding, kicking, goring, suffocation, 10. fright, etc., and provides for transportation of man or men in charge, assumption by them of all risk of accident to their persons and property, and that care, feeding and watering the stock should be at the risk and expense of the shipper, without any liability or duty with reference thereto, except in the actual transportation. But the twenty-eight hour act is for the prevention of cruelty to animals, and not primarily for the benefit of the owners, but restrictive of their rights, and cannot be waived except in the manner and upon the contingencies provided in the act. *Baltimore, etc., R. Co.* v. *United States* (1910), 220 U. S. 94, 31 Sup. Ct. 368, 55 L. Ed. 384. There were seventy-five mules shipped, and the judgment was for $1,000, and the motion for a new trial raises no question as to the amount of the damages.

Appellees were bound to know that there could be two rates, besides, the fact is specially pleaded that appellees were offered a lesser rate in consideration of limita- 11. tion of liability, and the defense is predicated upon failure to file the claim within the time limited by the contract, and that the damage occurred from overloading, crowding, kicking, suffocation and fright, and that appellant did not undertake to carry beyond the terminus of its. own line at Cinciniati. Appellees were bound to know in the making, and appellant in undertaking a through shipment, that there could be at least two rates, and that through shipment could not otherwise be undertaken, and that shipment could be required under either, and that it was not necessary that the rates be posted. It is sufficient that they have been filed with the Interstate Commerce Commission, approved and published, and it is presumed from an interstate shipment being undertaken, either that the shipment is made upon an agreed joint through rate, or the sum of the local rates, either with or without limitation of liability.

*Wabash R. Co.* v. *Priddy, supra; Illinois Cent. R. Co.* v. *Henderson Elevator Co.* (1913), 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290; *Kansas City, etc., R. Co.* v. *Albers Com. Co.* (1912), 223 U. S. 573, 32 Sup. Ct. 316, 56 L. Ed. 556; *Texas, etc., R. Co.* v. *Cisco Oil Mill* (1907), 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 565. Appellant was not therefore bound to inform appellees of the existence of the two rates, and evidence admitted over objection of appellant as to appellees not being so informed was improper, but the objection is not available unless under no circumstances could such evidence have been proper. The grounds of the objection should have been stated, in order to raise any question here, which is not shown to have been done, though the rule is different where the question on its face is improper, under any circumstances. There was a direct conflict in the evidence whether appellees had been so informed, and also there was evidence from which the jury might have inferred that appellant's agent was not authorized to receive any shipment under an unlimited liability. The agent of appellant who received the mules and entered into the contract first testified that appellant used but one form of limited contract for stock, and that appellant would ship under an unlimited contract if desired by a shipper, but if appellees had declined to ship under the contract, which was the one in general use by him at that station for seventeen years, the rate would have been twenty per cent higher, *and the same form of contract would have been used, and the contract required, would have made the shipment at the consignee's risk, by an indorsement upon the contract.* If the latter statement be correct, then the agent was not authorized to ship under the common-law liability, and there was no necessity for a demand which would have been unavailing, and the contract was invalid. *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 88 N. E. 680. Here the

evidence objected to followed the evidence by the agent, and was in some sense supportive, as was other evidence, of the theory that there was no opportunity to ship without limitation of liability, though the evidence of appellees was that they did not know of more than one kind of contract. But if the contract was out of the case by reason of lack of authority in the agent to ship without limitation, the evidence was harmless to appellant, and if the contract was in the case, the evidence was not inadmissible on its face under the circumstances, and if there were specific grounds of objection to it, they are not disclosed in the briefs.

Other causes for a new trial are urged, but the grounds of the objections to the questions are nowhere stated, and no question is presented as to them.

No error is made to appear, and the judgment must be affirmed, and it is so ordered.

## ON PETITION FOR REHEARING.

MYERS, J.—A very able brief has been filed by the learned counsel for appellant, on the petition for a rehearing, in which he calls attention to one oversight in the original opinion, to the point that §15 as amended in 1910 (U. S. Comp. Stat. Supp. 1911 p. 1297) could not apply in this case, nor was the clause in that section in regard to the shipper routing the shipment, in form or substance in the law as it existed when this action arose. In that particular counsel are correct and in that, the opinion is modified. The error arose from our use of the Compiled Statutes in which the dates of the various amendments are somewhat obscured by the manner of the compilation. It was not however material in the case, as it had been then decided by the Supreme Court of the United States, though the case had not then fallen under our notice, that, under the act of 1906, where an interstate shipment is accepted to be transported over a route selected

by the shipper, which was different from the one the carrier would otherwise have selected, and one as to which the carrier had no established through rate, the primary liability is the same as in case of an established route and rate, and does not offend against the due process of law clause of the Federal Constitution. The case goes farther than our opinion. *Norfolk, etc., R. Co.* v. *Dixie Tobacco Co.* (1913), 228 U. S. 593, 33 Sup. Ct. 609, 57 L. Ed. 980.

There are 140 typewritten pages of the evidence in the record. In appellant's brief this is condensed into 2½ pages of printed matter, with reference to the page and line of the record where the claim is made that the evidence may be found to sustain the claim of appellant as to what the evidence shows, and the so-called recital of the evidence discloses the conclusions of appellant as to what the evidence "shows", not what the evidence is. The recital by appellant is not supplemented by appellees' brief so as to present the actual evidence, and the rule is not complied with in appellant's brief. We have, however, in view of appellant's urgency and the importance of the questions, reviewed the instructions and, taking the most favorable view of appellant's recital as to what the evidence shows, we are convinced that the questions presented by the refused instructions are fully and fairly covered by the instructions given, and that none of those given were erroneous.

The difficulty in appellant's claim, and the matter that seems to have been entirely overlooked is, that the contract was practically taken out of the case, as well as the requested instructions, by the evidence of appellant's agent, that if shipment had been requested under any other contract, it could only have been by using the same form, but it would have been so modified that it would have required shipment at the *"consignee's risk"* (our italics) and that there was "no prescribed form for all shipments". This evidence is fatal to appellant's claim.

With the modifications indicated, the petition for rehearing is overruled.

NOTE.—Reported in 102 N. E. 34; 103 N. E. 839.  See, also, under (1) 31 Cyc. 358; (2) 6 Cyc. Anno. 492; (3) 8 Cyc. 798, (4) 6 Cyc. Anno. 480; (5) 6 Cyc. 377; (6) 3 Cyc. 303; (7) 38 Cyc. 1711; (9) 2 Cyc. 700; (10) 6 Cyc. 439; (12) 38 Cyc. 1378; (13) 6 Cyc. 392; (14) 2 Cyc. 1013.  As to the general question of liability of connecting carrier for loss beyond its own line, see 31 L. R. A. (N. S.) 1.  As to the validity and effect of a contract stipulation limiting the time to present a claim against a carrier of live stock, see 9 Ann. Cas. 17; 14 Ann. Cas. 416.  As to the validity and construction of the federal twenty-eight-hour law, see 21 Ann. Cas. 823.