WALL, ADMR., RESPONDENT, *v.* NORTHERN PACIFIC RY. CO., APPELLANT.

(No. 3,439.)

(Submitted November 13, 1914.   Decided December 18, 1914.)

[145 Pac. 291.]

*Common  Carriers—Livestock—Transportation — Delay — Common-law Duties—Limitation by Special Contract—Validity— Burden of Proof—Variance.*

Railroads—Transportation of Livestock—Delay—Common-law Duties— Special Contract—Variance.
1.   Under *Nelson* v. *Great Northern Ry. Co.,* 28 Mont. 297, 72 Pac. 642, a shipper of livestock may maintain an action against the carrier for a breach of its common-law duty to transport the cattle to their destination without unreasonable delay, and is not bound to sue as for a violation of the contract of carriage entered into between the parties; hence the contention, that by thus pleading a tort and proving a breach of the contract a fatal variance resulted, has no merit.

[As to liability of carrier for loss of or injury to livestock, see note in 130 Am. St. Rep. 432.]

Same—Common-law Duties—Limitation by Special Contract—Reasonableness.
2.   A common carrier may by special contract limit its common-law liability, provided the terms thereof are reasonable; whether they are reasonable depends upon the facts and circumstances of the particular case.

[As to limitation by carrier of its liability by notices in bills of lading, tickets and baggage checks, see note in 5 Am. St. Rep. 719.]

Same—Burden of Proof.
3.   Where a common carrier relies upon a special contract to escape liability for a breach of its common-law duty, it must plead and bear the burden of establishing it.

Same—Limitation of Common-law Duty—Unreasonableness.
  4.   Where a common carrier contracted to transport livestock to a point beyond its own line, a provision that the shipper, as a condition precedent to his right to recover damages for loss or injury to any of the stock, must give notice of his claim in writing to some officer or station agent of the company before the stock had been removed from the place of destination or mingled with other stock, was void for unreasonableness, and therefore not binding upon the shipper in the absence of proof that the initial carrier had an officer or agent at the place of destination to whom such notice might be given.

Same—Cause of Delay—Burden of Proof.
  5.   Since the movements of defendant's train carrying the plaintiff's cattle were exclusively under its own management and control, and the facts which caused the train to be delayed were peculiarly within the knowledge of its officers and agents, the burden was upon it to show that the delay complained of arose from some other cause than its own negligence.

Same.
  6.   Upon showing that defendant carrier consumed substantially thirteen days in delivering his cattle at the place of destination over a route usually covered in six or seven days, plaintiff had made a *prima facie* case of negligence on the part of defendant, and was not bound to show that every delay along the route was caused by the negligence of defendant.

*Appeal from District Court, Gallatin County; B. B. Law, Judge.*

ACTION by R. P. Wall, as administrator of the estate of R. J. Wall, deceased, against the Northern Pacific Railway Company. Judgment for plaintiff and defendant appeals from the judgment and an order denying it a new trial.   Affirmed.

*Messrs. Gunn, Rasch & Hall* and *Messrs. Hartman & Hartman,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

That a provision in a contract for an interstate shipment requiring written notice of claim before the stock is removed from destination or mingled with other stock is valid and reasonable, was sustained by the trial court, and has been uniformly upheld by the courts.   (*St. Louis & S. F. R. Co.* v. *Zickafoose,* 39 Okl. 302, 135 Pac. 406; *Atchison T. & S. F. R. Co.* v. *Baldwin,* 53 Colo. 416, 128 Pac. 449; *Mobile & O. R. Co.* v. *Brownsville Livery etc. Co.,* 123 Tenn. 298, 130 S. W. 788; *Southern Ry. Co.* v. *Tollerson,* 129 Ga. 647, 59 S. E. 799; *Hatch* v. *Minneapolis etc. Ry. Co.,* 15 N. D. 490, 107 N. W. 1087; *Atchison etc. Ry.*

*Co.* v. *Coffin,* 13 Ariz. 144, 108 Pac. 480; *Central of Georgia Ry. Co.* v. *Henderson,* 152 Ala. 203, 44 South. 542; *McElvain* v. *St. Louis etc. Ry. Co.,* 151 Mo. App. 126, 131 S. W. 736; *Cooke* v. *Northern Pac. Ry. Co.,* 22 N. D. 266, 133 N. W. 303.) Such provisions in contracts, if reasonable, are valid, in interstate shipments, regardless of the provisions of state laws. (*Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 L. Ed. 314, 33 Sup. Ct. Rep. 148, 44 L. R. A. (n. s.) 257, and note; *Missouri K. & T. R. Co.* v. *Harriman Bros.,* 227 U. S. 657, 57 L. Ed. 690, 33 Sup. Ct. Rep. 397; *St. Louis & S. F. R. Co.* v. *Zickafoose,* 39 Okl. 302, 135 Pac. 406; *St. Louis & S. F. R. Co.* v. *Bilby,* 35 Okl. 589, 130 Pac. 1089; *Appel Suit etc. Co.* v. *Platt,* 55 Colo. 45, 132 Pac. 71; *Southern Nursery Co.* v. *Winfield Nursery Co.,* 89 Kan. 522, 132 Pac. 149.)

There is a fatal variance between the allegations of the complaint and the proof, in that the complaint states an action in tort, based upon the common-law liability of the carrier, while the plaintiff's evidence shows that said cattle were shipped pursuant to a special contract, in writing. The validity of such contracts, giving a reduced rate of carriage in consideration therefor, has been repeatedly upheld. The recent case of *St. Louis & S. F. R. Co.* v. *Zickafoose,* 39 Okl. 302, 135 Pac. 406, discusses practically all provisions of such contracts, and reviews many of the authorities. (See, also, *Sanden* v. *Northern Pac. Ry. Co.,* 43 Mont. 209, 34 L. R. A. (n. s.) 711, 115 Pac. 408; *Rose* v. *Northern Pac. Ry. Co.,* 35 Mont. 70, 119 Am. St. Rep. 836, 88 Pac. 767; *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 L. Ed. 314, 33 Sup. Ct. Rep. 148, 44 L. R. A. (n. s.) 257, and cases cited in note; *Missouri K. & T. R. Co.* v. *Harriman Bros.,* 227 U. S. 657, 57 L. Ed. 690, 33 Sup. Ct. Rep. 397.)

Defendant's contention is, that where a valid contract has been entered into, covering the matters of which plaintiff complains in his complaint, namely, delays from various alleged causes, plaintiff must sue on such special contract and not on the common-law liability of the carrier, and that where he pursues the latter remedy, and his proof shows the existence

of such a special contract, there is a fatal variance, amounting to a failure of proof. We are familiar with the case of *Nelson* v. *Great Northern Ry. Co.,* 28 Mont. 297, 72 Pac. 642, which contains certain statements that, on first impression, may appear to be contrary to the defendant's contention here. We submit, however, that that case is distinguishable. In fact, it was reviewed and distinguished in the case of *Cooke* v. *Northern Pac. Ry. Co.,* 22 N. D. 266, 133 N. W. 303, and we contend that the correct rule applicable to this case is stated in the *Cooke Case.* There a special contract, similar to the one in this case, was involved.

The reasoning of the court in the case of *Cooke* v. *Northern Pacific Railway Company,* above, is particularly applicable to the special contracts relating to interstate shipments, in view of the recent decisions of the United States supreme court construing such contracts. It follows from the opinion in *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 L. Ed. 314, 33 Sup. Ct. Rep. 148, 44 L. R. A. (n. s.) 257, that the old common-law liability of the carrier no longer measures the liability in interstate shipments, made under special contracts at a reduced rate of carriage. The property is carried only on the terms of the special contract, and the carrier is liable only for its own negligence or that of its servants or that of the connecting carrier or its servants, from which negligence it cannot, of course, exempt itself.

Under a contract such as the one at bar, whereby the shipper assumes the risks for delays and agrees that the defendant is liable for delays, *etc.,* only when caused by the negligence of the defendant or connecting carrier, the burden is on the plaintiff, not only to prove unusual delays, but that they were due to such negligence. (See *Sherwood* v. *New York, O. & W. Ry. Co.,* 86 Hun, 556, 33 N. Y. Supp. 771; *Decker* v. *Missouri Pac. Ry. Co.,* 149 Mo. App. 534, 131 S. W. 118; *Clark* v. *St. Joseph & G. I. Ry. Co.,* 138 Mo. App. 424, 122 S. W. 318; *McDowell* v. *Missouri Pac. Ry. Co.,* 167 Mo. App. 576, 152 S. W. 435; *Sterling* v. *St. Louis I. M. & S. Ry. Co.,* 38 Tex. Civ. App. 451, 86 S. W.

655; *Peterson* v. *Chicago, Milwaukee etc. Ry. Co.,* 19 S. D. 122, 102 N. W. 595; *Illinois Central Ry. Co.* v. *Word,* 149 Ky. 229, 147 S. W. 949; *Bartelt* v. *Oregon R. & Nav. Co.,* 57 Wash. 16, 135 Am. St. Rep. 959, 106 Pac. 487.)

*Mr. Walter Aitken,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On January 2, 1912, R. J. Wall shipped four carloads of beef cattle from Belgrade, Montana, to the Chicago market over the Northern Pacific Railway as the initial carrier. The shipment did not reach its destination until January 15, and this action was instituted to recover damages which it is alleged resulted from unreasonable delays due to the railway company's negligence. From the judgment in favor of plaintiff and from an order denying it a new trial, the defendant appealed.

The complaint counts upon the carrier's common-law liability. [1] The answer sets forth a special contract under which, it is alleged, the shipment was made, and the execution of this contract is admitted by the reply. Appellant insists that the plaintiff was bound by the special contract; that he cannot sue for a breach of the carrier's common-law duty; and that, by pleading a tort and proving a breach of the contract, a fatal variance resulted. The precise question was presented fully, considered at great length, and determined adversely to appellant, in *Nelson* v. *Great Northern Ry. Co.,* 28 Mont. 297, 72 Pac. 642. A review of that decision confirms us in its correctness, and further discussion would be of no avail.

Paragraph 6 of the contract pleaded provides: "(6) The said [2-4] shipper further agrees that as a condition precedent to his right to recover any damages for loss or injury to any of said stock, he will give notice in writing of his claim therefor to some officer or station agent of the said company before said stock has been removed from the place of destination or mingled with other stock." In a few instances, provisions similar to this

have been held to be in the nature of statutes of limitations; but the decided weight of authority holds, and the better reason is, that their effect is simply to limit the carrier's common-law liability.    That a common carrier may by special contract limit the liability which it would otherwise incur, provided the terms of the special agreement are reasonable, was recognized in the *Nelson Case* and is the generally accepted doctrine in this country.    (4 Rul. Case Law, secs. 230, 253.)    Whether such special contract is or is not valid depends upon its reasonableness; and this question is always referable for solution to the facts and circumstances of the particular case.    (*Queen of the Pacific,* 180 U. S. 49, 45 L. Ed. 419, 21 Sup. Ct. Rep. 278.)

At the time the contract in question was executed at Belgrade, the shipper and agent for the carrier understood that the line of the Northern Pacific Company did not extend to Chicago, and that from the Minnesota transfer, near St. Paul, to Chicago, the stock would go forward over another line, the Chicago, Burlington & Quincy, which was designated in the contract as the connecting carrier.    Notice of this claim was given on January 25, but in the answer it is alleged that such notice was not given until long after the cattle in question had been removed from the place of destination and mingled with other stock, and this is admitted by the reply.    If the paragraph above means anything, it required the shipper to give notice in writing to an officer or station agent of the Northern Pacific Company.    Notice to an agent of the Burlington Road would not have been effective for any purpose.    The *company* mentioned in paragraph 6 is defined by the preamble to the contract to mean the "Northern Pacific Railway Company."    Furthermore, if this provision is valid, it must be so construed as to serve some purpose.    Its evident purpose was to enable the carrier to investigate the condition of the stock, and to that end the shipper was required to keep them separate until such investigation was made or a reasonable time therefor had elapsed.    By the facts before us the reasonableness of the provision is to be tested.    The contract is silent upon the question of service of the notice.    If personal

service was necessary, the shipper was required to hold the cattle at the Union Stockyards until he could find an officer or station agent of the Northern Pacific Company. No particular officer or station agent is designated, and, if this provision is to be taken literally, the shipper was required at his peril to assume the burden of finding some person who answered the description given. There is not a suggestion in the contract, in the pleadings or the proof, that the Northern Pacific Company had an officer or station agent at Chicago, or nearer than St. Paul, the eastern terminus of its road—more than 400 miles away. If service could have been made by mail, plaintiff would have been in no better position, though doubtless a letter written to the station agent at Belgrade, and mailed postpaid at Chicago, would have sufficed for a literal compliance with the terms of this provision. But, in any event, plaintiff would have had to bear the burden of keeping his cattle on the cars or in the stockyards until the notice had been received and a reasonable time for inspection had elapsed. If the paragraph in question be construed to mean that a written notice mailed from Chicago to any station agent of the Northern Pacific Company, even the agent at Seattle, would suffice, it is senseless. If it is construed to mean that the shipper should travel from Chicago to St. Paul and make personal service of the notice upon an officer or station agent of the Northern Pacific Company, then it is unreasonable to the point of being unconscionable. Whether the company had an officer or station agent at Chicago—at a point where it has no road—upon whom service of this notice could have been made, was a matter peculiarly within its own knowledge, and for this reason the burden was upon it to make proof of such fact.

If the carrier was negligent, resulting in unreasonable delay in the shipment and consequent damage, plaintiff's cause of action for a breach of common-law duty was complete without reference to notice. To escape liability, the burden was upon the carrier to plead and prove such a special contract as would effect a modification of the duty imposed by the common law.

In the *Nelson Case,* Mr. Commissioner Poorman, voicing the opinion of the court, said: "The effect of the special contract is therefore merely to create and define certain cases and conditions under which its full common-law liability shall not attach. The special contract is the evidence of such exception, and, to the extent to which it is valid, constitutes a defense, and as such must therefore be pleaded as a defense; the burden of proof resting on the defendant to establish it."

The validity of paragraph 6 above depends upon its reasonableness, and it was therefore incumbent upon the carrier to show that it was relieved by the provision of a contract valid—in this instance reasonable. (*Houtz* v. *Union Pac. R. Co.,* 33 Utah, 175, 17 L. R. A. (n. s.) 628, and note, 93 Pac. 439.)

In *Missouri Pac. Ry. Co.* v. *Harris,* 67 Tex. 166, 2 S. W. 574, there was presented a case in all particulars identical with the one before us, and the court there said: "If a carrier sets up a claim to notice of a given fact, as a condition upon which its liability to a shipper is to depend, then it is incumbent upon it, when the notice was to be given to one of its own officers or agents, to show that it had an officer or agent at or near the place where the notice is to be given, in any case in which the shipper, by the terms of the contract through which notice is claimed, is to hold the property shipped at the place of delivery, at his own expense and risk, until it can be inspected by some agent of the carrier. This would be especially true when the property to be inspected is intended for immediate sale at the place of destination, is perishable in character, likely to deteriorate in value by holding, and expensive to keep. If in such case the carrier has not an officer or agent at or near the place where the property to be inspected is delivered, so that notice may be promptly given and an inspection, if desired, speedily made, then a contract requiring notice to be given to any officer or agent of the carrier is not reasonable in its character." To the same effect is *Baxter* v. *Louisville, N. A. & C. R. Co.,* 165 Ill. 78, 45 N. E. 1003.

Our conclusion is that this provision of the special contract, in the absence of any showing that it was reasonable, was not binding upon the shipper, and this disposes of all other related questions.

By instruction 4 the trial court imposed upon the plaintiff the burden of proving negligence on the part of the defendant which resulted in the damages claimed. By instruction 10 the jury were informed that proof of unusual delays alone was not sufficient to establish negligence. By instruction 23 the court declared that the law imposes upon the carrier the duty of exercising reasonable diligence in its business and to complete the journey within a reasonable time, "and, if he does not do so, and the stock is injured by the delay, the carrier will be liable." The court then told the jury that whether a given time was or was not reasonable was a question of fact to be determined by the jury from all the circumstances of the case as presented by the evidence. There is not any conflict in these instructions. They are to be construed together. No. 4 fixes the burden of proof. No. 10 warns the jury as to the *quantum* of proof required, and No. 23 does nothing more than refer the question of reasonableness, under the circumstances of the given case, to the jury for determination upon the evidence before them.

There is not any conflict between instruction 4, which fixes the burden of proof, and No. 24, which directs the jury how that burden may be met. Neither are we able to agree with counsel for appellant that Instruction No. 24 is inherently erroneous. An instruction in all essentials identical with it was approved by the court in the *Nelson Case*.

Appellant contends most earnestly that plaintiff failed to [5, 6] show that the delays in the course of transportation were chargeable to the carrier's negligence. No useful purpose would be served by reviewing the evidence at length; we content ourselves with saying that we think the evidence in its entirety sufficient to sustain the verdict. If counsel for appellant mean that plaintiff did not show the cause of every delay and thereby

demonstrate that the delays resulted from negligence, then we agree with them; but we do not assent to the doctrine that plaintiff assumed any such burden.  The movements of the train were under the exclusive management and control of the carrier, and the facts which caused the train to be delayed were peculiarly within the knowledge of the officers and agents of the railway company.  As was pertinently remarked by the supreme court of Washington in *Jolliffe* v. *Northern Pac. Ry. Co.*, 52 Wash. 433, 100 Pac. 977: ''A car may be sidetracked and delayed for one hour, or for twenty-four hours, by order of the train-dispatcher, or somebody in authority hundreds of miles away, for a necessity which is apparent to him; and that necessity may have been brought about by negligence in the intricate management of the business by some responsible agent of the company a long distance from the location of the train which is sidetracked.  There certainly can be no semblance of justice in relieving the party from making a disclosure who is in a position to make it, or in making an explanation which will excuse it if there be such an explanation available to him.  This court and other courts have frequently said that, where it is necessary to make a character of proof, which by reason of the circumstances surrounding the case is exclusively within the knowledge of one or the other of the parties, the burden would be upon the party possessed of that knowledge to make the proof.''  (See, also, note to *Cleve* v. *Chicago, B. & Q. Ry. Co.*, 15 Ann. Cas. 33.)

To impose upon the shipper the burden of ascertaining the cause of every delay in the transportation of his property and refuse relief in the absence of such proof would be tantamount to denying any right of action for damages resulting from negligent delays in transportation.  Whatever may be said of the trial court's Instruction No. 10, when the plaintiff showed that the carrier consumed substantially thirteen days in delivering his stock in Chicago, over a route which usually consumes only six or seven days, he met the burden imposed upon him to make out a *prima facie* case, and called upon the defendant for ex-

planation, as the party possessing knowledge of the facts which occasioned the delays.

In *Nelson* v. *Chicago, B. & Q. Ry. Co.*, 78 Neb. 57, 110 N. W. 741, the court said: ''While we do not hold that a railroad company is an insurer of the arrival of its trains on schedule time in the transportation of livestock or other freight, yet, where there is a material delay, the company must to exonerate itself from liability, show that the delay arose from some cause other than its own negligence.''

In *Bosley* v. *Baltimore & O. R. Co.*, 54 W. Va. 563, 66 L. R. A. 871, 46 S. E. 613, the court quoted with approval from 5 American and English Encyclopedia of Law, second edition, 254, as follows: ''It seems, however, that on proof of a delay in delivery a *prima facie* case is made out against the carrier, and the burden of proof rests upon it to show that it was not responsible. It rests on the carrier for the additional reason that such facts are peculiarly within the knowledge of the carrier and not easily ascertained by the shipper.''

In *Johnson* v. *New York, N. H. & H. R. R. Co.*, 111 Me. 263, 88 Atl. 988, the court said: ''If there were no other facts than those already stated, we think a jury would be warranted in saying that there was unreasonable delay somewhere in forwarding and transporting this car of strawberries; the time occupied being fifty-three hours instead of twenty-four hours or less, the ordinary time. It is so far sufficient that it puts the *onus* of explanation on the defendant.''

In 4 Elliott on Railroads, second edition, section 1583, the rule is stated as follows: ''The fact that there was unusual delay does not always show a breach of duty. * * * The delay may be so great as to make it proper for the court to adjudge, as matter of law, that it was unreasonable; but, in accordance with the doctrine heretofore stated, the delay may be shown to have been a reasonable one under the facts and circumstances of the particular case, and, as a general rule, the question is one of fact, or of mixed law and fact, for the jury, under proper instructions. Where the delay is an unusual one, and is **not**

explained, it is held to be *prima facie* evidence of negligence, but that, in a case where there is only a slight delay, the rule is different.'' . (*Tiller & Smith* v: *Chicago, B. & Q. Ry. Co.* (Iowa), 112 N. W. 631; 6 Cyc. 506.)

In justice to appellant's contention, it must be conceded that the authorities are by no means unanimous in supporting the rule as we have announced it, as a reference to 4 Rul. Case Law, sec. 464, and other texts, will demonstrate; but, without reference to the weight of authority numerically considered, we have adopted the rule which in our judgment is most reasonable and imposes the least hardship.

It is insisted by counsel for appellant that, even if it be held that plaintiff made out a *prima facie* case, it was completely overcome by the testimony of defendant in explanation of the delays. To give even a brief epitome of the testimony of defendant's twenty-three witnesses would extend this opinion needlessly. In our judgment, instead of fully exonerating the carrier, the evidence produced by it materially aided plaintiff's case.

We do not find any error in the record prejudicial to a substantial right of appellant, and direct that the judgment and order be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied January 6, 1915.

Appeal taken to supreme court of the United States, January 29, 1915.