## Toledo, St. Louis & Western Railroad Co. *v.* Milner, et al.

[No. 8,771.   Filed December 15, 1915.   Rehearing denied March
10, 1916.   Transfer denied June 2, 1916.]

1. **Appeal.**—*Objection to Sufficiency of Complaint.—Waiver.—Statute.*—Since the amendment of §348 Burns 1908, §343 R. S. 1881, by Acts 1911 p. 415, the objection that the complaint does not state facts sufficient to constitute a cause of action is waived unless taken by answer or demurrer.   p. 212.

2. **Commerce.**—*Interstate Shipments.—State Legislation.*—Shipments which are interstate commerce are governed by federal statutes which supersede state legislation thereon.   p. 213.

3. **Carriers.**—*Interstate Shipments.—Option of Rates.—Effect.— Invalid Shipping Contract.*—Under the federal law regulating interstate shipments, there may be at least two rates that are binding on the parties, if they have been filed with the Interstate Commerce Commission and duly approved and published, the shipper having the option of choosing the rate under which he will ship, and, when such option is exercised, the right of the shipper to damages, if any, may be determined in accordance with any reasonable stipulations accompanying the rate under which the shipment is made, but the carrier can not by contract relieve itself from liability for actionable negligence.   p. 213.

4. **Carriers.**—*Interstate Shipment.—Invalid Shipping Contract.— Common-Law Liability.*—When an interstate shipper of freight is compelled to ship under a special contract restricting the liability of the carrier, or not at all, and is denied the privilege of paying the higher authorized rate and shipping under such unrestricted common-law liability, as is authorized by the federal statute, such contract is not fairly or freely entered into and it affords the carrier no protection from its common-law liability, since it is invalid.   p. 216.

5. **Carriers.**—*Interstate Shipment.—Common-Law Liability.—Estoppel to Deny.*—Under the provisions of the Interstate Commerce Act of February 4, 1887, §22, 24 Stat. 387 (§8595 U. S. Comp. St. 1913), declaring that nothing in the act shall abridge or alter the remedies existing at common law or by statute, and that the provisions of the act are an addition thereto and under the Carmack Amendment (Act June 29, 1906, §7, 34 Stat. 595, §8592 U. S. Comp. St. 1913), providing that it was not the purport of the act to deprive any holder of a receipt or bill of any right under existing law, if a carrier, by its own wrongful act, prevented the shipper from exercising his option as to rates and shipping under a contract charging such carrier with full common-law liability, the case is thus taken outside of the federal statute, and

the carrier can not deny such shipper his common-law remedy for damages sustained by failure to safely transport and deliver freight. p. 217.

6. CARRIERS.—*Interstate Shipment.—Special Contract.—Burden of Proof.*—Where a carrier interposes as a defense a special contract limiting its liability, or showing nonliability, the burden is on it to show a valid contract and to establish the reasonableness of the provision on which it relies and, if there is no valid contract, such defense is not available.    p. 217.

7. APPEAL.—*Review.—Sufficiency of Evidence to Support Verdict.*— Where there was a general verdict for plaintiffs, who were interstate shippers, the complaint averred that the defendant, a common carrier, had been negligent in delaying the shipment of a consignment of live stock, such delay resulting in loss to plaintiffs, and the defendants set up as a defense that the consignment had been shipped under a special contract limiting the liability of the carrier, such contract providing for the lower of two freight rates, such rate having been promulgated in compliance with the provisions of the federal interstate commerce law.   Defendants also answered that plaintiffs had failed to present their verified claims for damages within the time stipulated in the contract.   There was evidence tending to prove, though not conclusively, that plaintiffs were compelled to sign the special contract set up as a defense in order to secure the shipment of their freight; that defendant's agent would not move the cars until such contract was signed; and that the plaintiffs were not given the right to make their option as to which of the two published rates they ship under.   *Held,* that, as the general verdict finds every material fact in favor of the plaintiffs, and there is some evidence from which the inferences necessary to support the verdict might reasonably have been drawn, the verdict will not be disturbed on the ground that it is not sustained by the evidence, although other and different inferences of fact might reasonably have been drawn therefrom.   p. 218.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by George D. Milner and Willard E. Milner, partners, against the Toledo, St. Louis & Western Railroad Company. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Charles G. Guenter, Braden Clark, Geddes Van Brunt, Clarence Brown* and *Charles A. Schmettau,* for appellant.

*William Robison,* for appellees.

FELT, P. J.—This is an action for damages alleged to have been sustained by appellees in connection with nine separate interstate shipments of cattle, hogs and sheep. Seven of the shipments were from Frankfort, Indiana, to Pittsburgh, Pennsylvania, and the other two were from Frankfort, Indiana, to Buffalo, New York. The suit is based on the common-law duty of appellant to safely carry and deliver the live stock to the designated place. The complaint alleges negligence of appellant in delaying the shipments and in failing to transport the live stock with reasonable diligence by reason of which negligence some of appellees' live stock died en route; that there was extra shrinkage on other stock; that the animals had a stale appearance by reason of being kept so long on the road, and that there was a decline in the market price between the time the stock should have arrived and the time it did arrive, by reason of all of which appellees were damaged.

The complaint consists of nine paragraphs, each of which covers a different interstate shipment, but they are in all essentials the same. In each it is alleged that appellees were partners engaged in buying and shipping live stock; that appellant owned and operated a railroad from Toledo, Ohio, to East St. Louis, Illinois; that it was a common carrier of freight and passengers for hire and engaged in interstate commerce, and held itself out as such common carrier from Frankfort, Indiana, to Pittsburgh, Pennsylvania and Buffalo, New York.

To each of such paragraphs appellant filed an answer in two paragraphs, the first of which is a general denial, and the second, an affirmative paragraph in which appellant admits that it received shipments of live stock from appellees to be carried to Pittsburgh, Pennsylvania, or Buffalo,

New York, as the case might be, but it says that such
live stock was delivered by appellees and received
by appellant under a special written contract duly
entered into by the parties; that on the dates of the
respective shipments the rate charged appellees
for shipping live stock from Frankfort, Indiana,
to said cities was a lower rate than that charged
without a special contract and without limitation
of appellant's liability; that appellant maintained
two rates on live stock between the points named;
that the rate, where no special contract limiting its
liability was executed, was ten percent.higher than
that where a shipment was made under special
contract; that both rates were duly filed with the
Interstate Commerce Commission and published;
that the same were the only lawful established rates
for such shipments and were reasonable; that ap-
pellees knew of the above rates and, for the purpose
of obtaining the lower rate, they made and entered
into a special contract, a copy of which is filed with
such answer; that appellees could have shipped
the stock at the higher rate without executing any
special contract and without limitation of. ap-
pellant's liability; that they had full opportunity
to do so; that appellant has fully complied with all
the terms and conditions of the special contract
by it to be performed; but that appellees have
wholly failed to comply with the terms thereof
in this: That they have failed to present their
claims for loss or damage in writing, verified by
their affidavit, within the time given and stipulated
by the contract. To each of such affirmative
paragraphs of answer appellees replied by general
denial and by a plea of want of consideration.
Upon the issues thus formed, the cause was tried
by a jury and a verdict was returned in favor of
appellees for $525. With its general verdict, the

jury returned answers to interrogatories. Judgment was rendered on the verdict and appellant's motions for a new trial and in arrest of judgment were respectively overruled. The errors assigned and relied on for reversal are: (1) Error of the court in overruling the motion for a new trial; (2) the overruling of appellant's motion in arrest of judgment; (3) the complaint does not state facts sufficient to constitute a cause of action.

1. Since the amendment of §348 Burns 1908, §343 R. S. 1881, by Acts 1911 p. 415, §348 Burns 1914, no question is presented by the third error assigned.

The question arising under the motion for a new trial, and not waived by failure to present in the briefs, is the sufficiency of the evidence to sustain the verdict. *Kaufman* v. *Alexander* (1913), 180 Ind. 670, 672, 103 N. E. 481; *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 626, 103 N. E. 652; *Harrah* v. *Dyer* (1913), 180 Ind. 229, 242, 102 N. E. 14, Ann. Cas. 1916B 868.

Appellees do not claim that they complied with the contract pleaded by appellant by filing verified proofs of claims within the five days therein prescribed; but they do contend that they were given no choice of rates, and were compelled to ship at the rate named in the one special contract or not at all; that by reason thereof such alleged contracts are not binding on them; that independent of the state or federal statutes, appellant is liable under the common law for the damages sustained.

Appellant contends that no common-law liability is shown; that the shipments were made under special written contracts, and that in no event can a common-law liability be shown by proof that shipments were so made; that the contracts, under

which the stock was shipped, were valid and were sustained by a sufficient consideration.

The shipments were all interstate commerce and, as to such shipments, state legislation is superseded by the federal statute on the subject. *Wabash, etc., R. Co.* v. *Priddy* (1912), 179 Ind. 483, 494, 101 N. E. 724; *Adams Express Co.* v. *Croninger* (1913), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44. L. R. A. (N. S.) 257 and notes; 4 R. C. L. 909.

Both the shipper and carrier are bound to know that under the federal law regulating interstate shipments there may be at least two rates; that the rates are binding on the parties if they have been filed with the Interstate Commerce Commission and duly approved and published; that the shipper has the option of choosing the rate under which he will ship and, when such option is exercised, the carrier is bound to make the shipment accordingly, and the rights of the parties as to damages sustained by the shipper, if any, will be determined in accordance with any reasonable stipulations accompanying the rate under which the shipment is made; that the shipper can not by contract relieve itself from liability for actionable negligence. *Cleveland, etc., R. Co.* v. *Hayes* (1913), 181 Ind. 87, 104, 105, 102 N. E. 34, 103 N. E. 839; *Illinois, etc., R. Co.* v. *Henderson Elevator Co.* (1913), 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290; *Boston, etc., R. Co.* v. *Hooker* (1914), 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915 B 450, Ann. Cas. 1915D 593; *Adams Express Co.* v. *Croninger, supra; Missouri, etc., R. Co.* v. *Harriman* (1913), 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; *Hart* v. *Pennsylvania, etc., R. Co.* (1884), 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717.

To sustain the judgment of the lower court, two

propositions must be established, viz.: (1) That notwithstanding the federal statute on the subject of interstate shipments, there is still a right of action at common law, in certain instances, for damage sustained by the shipper on account of the negligence or wrongful acts of the carrier; (2) that in the case at bar there is evidence tending to sustain the verdict on such theory

Section 22 of the Interstate Commerce Act (24 Stat. at L. 387, §8595 U. S. Comp. St. 1913) provides that: "Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies."

In considering this provision, the Supreme Court of the United States, in *Texas, etc., R. Co.* v. *Abilene Cotton Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, said: "Repeals by implication are not favored, and indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required. * * * This clause, however, can not in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. * * * The clause is concerned alone with rights recognized in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act."

The Carmack amendment to the Interstate Commerce Act (34 Stat. at L. 595, §8592 U. S.

Comp. St. 1913), fixing liability on the initial carrier contains the proviso, "That nothing in this section shall deprive any holder of such receipt or bill of any remedy or right of action which he has under existing law."

In the case of *Adams Express Co.* v. *Croninger*, *supra*, 506, the Supreme Court of the United States said: "The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words, 'any loss or damage,' would be to ignore the qualifying words, 'caused by it.' The liability thus imposed is limited to 'any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability from some default in its common-law duty as a common carrier.

"But it has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the divers regulation which it was the purpose of congress to put an end to.

"What this court said of the §22 of this act of 1906 in the case of *Texas & Pac. Ry.* v. *Abilene Cotton Mills*, 204 U. S. 426, is applicable to this contention. It was claimed that that section

continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in §20, that it was evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act.' Again, it was said, of the same clause, in the same case, that it could 'not in reason be construed as continuing in a shipper a common-law right the existence of which would be inconsistent with the provisions of the act. In other words, the act cannot be said to destroy itself.'

"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which · would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself."

From the foregoing we conclude that a common-law action for damages may be sustained by the shipper against the carrier in certain instances for damages sustained in an interstate shipment of property. In an interstate shipment of freight where the shipper is compelled to ship under 4.  a special contract restricting the liability of the carrier, or not at all, and is denied the privilege of paying the higher authorized rate and shipping under such unrestricted common-law liability, as is authorized by the federal statute, it can not be said that such contract is freely and fairly entered into or that it affords the carrier

any protection from its common-law liability, since it is invalid. In such instance, the carrier has by its own wrongful act prevented the 5. making of a lawful contract mutually binding upon the parties thereto as contemplated by the federal statute and has, as affecting the rights of the shipper, taken the case outside the provisions of the statute, and can not rightfully be heard to deny him his common-law remedy for damages sustained by reason of its failure to safely transport and deliver the freight at the place of destination. *Cleveland, etc., R. Co.* v. *Hayes, supra; Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 470, 88 N. E. 680; *Pittsburgh, etc., R. Co.* v. *Mitchell* (1910), 175 Ind. 196, 208, 91 N. E. 735, 93 N. E. 996; *Keithley* v. *Lusk* (1915), 190 Mo. App. 458, 177 S. W. 756, 759; *Adams Express Co.* v. *Croninger, supra; Boston, etc., R. Co.* v. *Hooker, supra; Chicago, etc., R. Co.* v. *Core* (1915), (Tex. Civ. App.), 176 S. W. 778, 782; *Wall* v. *Northern Pac. R. Co.* (1914), 50 Mont. 122, 145 Pac. 291, 292; *Wise* v. *Atlantic, etc., R. Co.* (1915), 101 S. C. 510, 86 S. E. 22.

Where a carrier relies on a special contract limiting its liability, or showing nonliability, the burden is on it to show a valid contract and to establish the reasonableness of the pro-6. visions upon which it relies. If there is no valid contract, such defense is not available. 4 R. C. L. 920, §377; *Wall* v. *Northern Pac. R. Co., supra; Wabash R. Co.* v. *Thomas* (1906), 222 Ill. 337, 78 N. E. 777, 7 L. R. A. (N. S.), 1041; *Houtz* v. *Union Pac. R. Co.* (1908), 33 Utah 175, 93 Pac. 439, 17 L. R. A. (N. S.) 628; *Rosenfeld* v. *Peoria, etc., R. Co.* (1885), 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500; *St. Louis, etc., R. Co.* v. *Alex-*

*ander* (1913), 227 U. S. 218, Ann. Cas. 1915B 77, and notes pp. 80-86.

In the case at bar, there is evidence tending to show that appellees had to sign the special contracts relied on by appellant to secure the shipment of their live stock; that appellant would not move the cars until such contracts were signed; that one of the appellees had asked appellant's agents if they would ship the stock without such contract and was informed that it would not be done; that the agents made him sign up blank contracts in advance of the shipments.

The verdict of the jury finds every material, issuable fact in favor of appellees.   The evidence is by no means conclusive upon the propositions that appellees were given no choice of rates and were compelled to ship under the special contract relied on by appellee or not at all.   But there is evidence from which such facts may have been

7.   inferred by the jury.   Where the necessary inferences to support the verdict have been drawn from the evidence, this court will not disturb the verdict on the insufficiency of the evidence, if there is any evidence from which such inferences may have reasonably been drawn, though other and different inferences of facts might reasonably have been drawn therefrom.

In *Cleveland, etc., R. Co.* v. *Hollowell, supra,* the Supreme Court said: "It is not necessary, to conclude the owner by the terms of a special contract limiting the liability of the carrier, that he should actually have been offered the option of shipping subject to the terms of such contract or under the carrier's common-law liability.   It will be sufficient if it would have been given if the owner had demanded

it. But if such demand would have been unavailing, the owner would be under no duty to make it, and his assent to a contract restricting the common-law liability of the carrier would not bind him."
See, also, *Cleveland, etc., R. Co.* v. *Hayes, supra,* 105.

We find no reversible error. Judgment affirmed.

Ibach, C. J., Caldwell, Moran, Shea and Hottel, JJ., concur.

NOTE.—Reported in 110 N. E. 756. Limitation of carrier's liability for injury to or loss of goods as affected by the Interstate Commerce Act, Ann. Cas. 1912B 672; 1915D 612. Constitutionality of state regulation of interstate commerce, 27 Am. St. 547. See, also, under (2) 7 Cyc 421; (4), (5) 6 Cyc 395, 396; (6) 6 Cyc 519; 9 Ann. Cas. 17; 14 Ann. Cas. 416; Ann. Cas. 1914A 231; (7) 6 Cyc 505.