# THE CHESAPEAKE AND OHIO RAILWAY COMPANY OF INDIANA *v.* JORDAN.

[No. 9,163. Filed December 21, 1916.]

1. CARRIERS.—*Carriage of Goods.—Interstate Shipment.—Action for Damages.—Common-law Liability.*—There may be a cause of action under the common law against a common carrier for its negligence or wrongful acts resulting in damages to an interstate shipper, although there is a federal statute governing interstate shipments. p. 370.

2. CARRIERS.—*Carriage of Goods.—Action for Damages.—Defenses.* —Under §8592, cl. 11, U. S. Comp. St. 1913, 34 Stat. at Large p. 595, providing that every common carrier receiving property for transportation from one state to another shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss or damage to such shipment, the duty is imposed on the carrier of issuing a receipt or bill of lading for an interstate shipment of freight, and, in an action for damages thereto, it can not predicate a defense on its failure to issue the receipt required by the statute. p. 371.

3. APPEAL.—*Waiver of Error.—Briefs.*—An assignment of error predicated on the overruling of the motion for judgment on the

interrogatories is waived by failure of appellant to present any point or proposition relating thereto in its brief. p. 371.

4. CARRIERS.—*Carriage of Goods.—Limiting Liability.—Special Contracts.*—Notwithstanding the federal statute governing interstate shipments common carriers may make contracts whereby they limit and define the extent of their liability for interstate shipments under specified conditions, but such carriers cannot, by contract, relieve themselves from liability for damages caused by their negligence or that of their employes. p. 375.

5. COMMERCE.—*Interstate Shipments.—Federal Legislation.*—Where shipments of freight are interstate, the state law is superseded by the federal statutes relating to interstate commerce as to all questions of liability or defense covered by such statutes. p. 375.

6. COURTS.—*Jurisdiction of State Courts.—Interstate Commerce.— Carriage of Goods.—Action for Damages.*—Although there are federal statutes governing the liability of common carriers for interstate shipments of freight, the state courts are not thereby deprived of jurisdiction in actions for damages to such shipments, for the federal law is a part of the law of the state and, in such actions, may be applied by the state courts and the relief warranted given. p. 375.

7. CARRIERS.—*Carriage of Live Stock.—Damages.—Liability.—Limiting by Special Contract.*—Where, in an action against a common carrier for damages to an interstate shipment of live stock, the defendant answered that its liability was limited by a special contract issued and accepted by the shipper several months after the shipment and payment of the freight charges, no receipt or bill of lading having been issued at the time of the shipment, the acceptance of the special contract under such circumstances was without consideration unless it was in accordance with a custom, as claimed by defendant, established by prior similar transactions between the parties. p. 376.

8. TRIAL.—*Verdict.—Scope and Effect.*—A general verdict for plaintiff is a finding in his favor of every issuable fact and is conclusive on all questions where there is any evidence tending to support the verdict. p. 377.

9. CARRIERS.—*Carriage of Live Stock.—Action for Damages.—Evidence.*—In an action against a common carrier for damages to a shipment of live stock, evidence that on a few occasions prior to the transaction in controversy plaintiff had shipped live stock under a special contract limiting the carrier's liability, but that the contracts were procured at the time of the shipment and that in some instances bills of lading had been obtained after shipments were made, was insufficient to show the establishment of a custom, as claimed by defendant, permitting the carrier, where a shipment of live stock was made under an oral agreement, to

issue to the shipper several months thereafter a special contract restricting its liability as to such shipment.	p. 377.

10. CARRIERS.—*Carriage of Goods.—Shipping Under Oral Agreement.*—If a bill of lading is not furnished a shipper until after the goods are fully accepted by the carrier under an oral agreement, the bill of lading constitutes no part of the contract and the oral agreement controls.	p. 379.

11. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.*— In an action for damages to a shipment of live stock, where the verdict and the jury's answers to the interrogatories showed that the jury found adversely to defendant's contention that the shipment was made under a special contract restricting carrier's liability and that the shipper was bound thereby, the defendant could not have been harmed by the ruling of the trial court, even though erroneous, on certain instructions, the admission of evidence, etc., relating to the provisions of such special contracts. p. 379.

12. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.— Submission of Issues.—Verdict.—Scope and Effect.*—In an action by a shipper for damages to a shipment of live stock, where the carrier claimed that the shipment was made under a special contract restricting its liability, but the shipper contended that he was allowed to exercise no option as to rates or other conditions of transportation, but was compelled to ship under the special contract or not at all, the general verdict for plaintiff was a finding in his favor on such issue, so that any error by the trial court in the instructions or admissions of evidence relating to such special contract was harmless.	p. 380.

From Delaware Superior Court; *Myron H. Gray,* Special Judge.

Action by Seward W. Jordan against the Chesapeake and Ohio Railway Company of Indiana. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Warner & Warner, McClellan, Hensel & Guthrie* and *Robbins, Starr & Goodrich,* for appellant.

*Ward Marshall, George H. Koons* and *George H. Koons, Jr.,* for appellee.

FELT, C. J.—This is a suit to recover damages for failure to furnish transportation, and to safely transport certain live stock from Medford, Indiana, to Chicago, Illinois. The complaint was in three paragraphs, which was answered by

a general denial and by a second paragraph of special answer. Appellee filed a reply to the second paragraph of answer in four paragraphs, the first of which was a general denial. The case was tried by a jury, and a verdict was returned for $500, also answers to interrogatories. Appellant's motion for a new trial and for judgment on the answers of the jury to interrogatories were overruled; judgment was rendered for appellee on the general verdict and this appeal was prayed and granted.

Appellant has assigned as error the overruling of its separate demurrer to each paragraph of the complaint; the overruling of its separate demurrer to each of the second, third and fourth paragraphs of reply to the second paragraph of its answer; the overruling of its motions for a new trial and for judgment on the answers of the jury to the interrogatories, and the overruling of its several motions to require the jury to return to its room and to more definitely and correctly answer certain interrogatories designated in the motion.

Omitting the formal allegations about which there is no controversy, the first paragraph of complaint, in substance, charges that: on January 11, 1912, appellee tendered to appellant, at its station at Medford, 325 sheep for shipment to Chicago, Illinois, and offered to pay the reasonable and established charges for such shipment; that appellant failed and refused to so transport the sheep within a reasonable time, although it could have done so, and did not ship the same until January 16, 1912; that appellant then agreed to safely transport the sheep to Chicago within a reasonable time but did not issue appellant any bill of lading or receipt therefor, and wholly failed to transport the sheep within a reasonable time, by reason of which the sheep became emaciated, sick and crippled and some of them died and the market declined during the delay, the details of which are alleged, by reason of all of which

appellee was damaged in the sum of $700 for which he demands judgment.

The second paragraph is substantially like the first and differs only in details which are not important in deciding the questions presented for decision.

The third paragraph contains substantially the same general allegations as the other paragraphs and charges that: on January 16, 1912, appellee delivered to appellant at Medford, Delaware County, Indiana, 325 fat sheep to be transported to Chicago, Illinois, and appellant then and there received them for such shipment and agreed to safely transport them to Chicago but did not issue to appellee any receipt or bill of lading therefor; that the sheep were loaded at Medford at nine o'clock a. m. on January 16, 1912, and were not delivered at the stockyards in Chicago until six o'clock p. m. January 18, 1912, and were negligently kept in said cars all the time, or fifty-seven consecutive hours, without food, water, or rest, in violation of the federal statute duly enacted and in force from and after June 29, 1906, which provides, in substance, that any railway company or common carrier shall not confine any cattle, sheep, or other animals in cars for more than twenty-eight consecutive hours without unloading them in a humane manner into properly equipped pens for rest, water and feeding, for at least five consecutive hours, unless prevented by storm, etc., provided, on the written request of the owner or custodian, the time may be extended from twenty-eight to thirty-six hours; that neither appellee nor any custodian of said sheep signed any such request; that said sheep were given no rest, food, or water during the time aforesaid which was exclusive of the time consumed in loading and unloading, and by reason thereof they were almost starved, had lost flesh and were greatly reduced in weight and became unsightly in appearance, and some of them were crippled and others dead and missing; that owing to the negligence of appellant in

so confining said sheep for the time aforesaid they deteriorated in value $380; that the value of sheep not delivered was $56; that the sheep that died on account of the neglect aforesaid were of the value of $45 and the loss in the sheep that were crippled amounted to $25, for all of which appellee demanded damages in the sum of $700.

The memorandum accompanying the demurrer to the complaint states, in substance: (1) That neither paragraph sets out a copy of the bill of lading or contract covering the shipment, and the averments show it was an interstate shipment and governed by the federal law and not by the laws of the State of Indiana, and therefore insufficient without a copy of such bill of lading or contract; (2) that the allegations fail to show that appellee made due application for cars as required by the statute; that it is not shown that appellant failed or refused to issue a receipt or bill of lading for the sheep or that appellee made demand for such receipt or bill of lading.

Appellant urges the proposition that each paragraph shows that the shipment was interstate and governed by the Carmack Amendment to the Hepburn Act, which requires the issuance of a receipt or bill of lading by the carrier, the issuance of which cannot be waived; that the liability, if any, is based upon a breach of the contract evidenced by such receipt or bill of lading, without which the complaint is sufficient, unless it appears that demand was made for such receipt or bill of lading by the shipper and refused by the company. The complaint does not purport to state a cause of action under the statute, though it does appear in each paragraph that the shipment was interstate. It has been held that there may be a

1.  cause of action for damages, under the common law, against a common carrier for its negligence or wrongful acts resulting in damages or loss to the shipper of an interstate shipment, notwithstanding the federal statute governing such shipment. According to the aver-

2.  ments appellant accepted the live stock for shipment and failed to issue any receipt or bill of lading therefor to the shipper.

The United States Statutes at Large (vol. 34 p. 595, §8592, cl. 11, U. S. Comp. St. 1913) provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

The statute clearly imposed on the carrier the duty of issuing the receipt or bill of lading and it cannot shield itself from liability by a failure to discharge a statutory duty. Each paragraph states a cause of action under the common law. *Toledo, etc., R. Co.* v. *Milner* (1915), 62 Ind. App. 208, 110 N. E. 756, and cases cited.

3.  The assignment that the court erred in overruling appellant's motion for judgment on the answers of the jury to the interrogatories is waived by failure to present any point or proposition relating thereto in appellant's briefs.

The second paragraph of answer to each paragraph of complaint admits the shipment by appellant of the sheep from Medford, Indiana, as alleged, but avers that it then had two rates for the shipment of such live stock, one of which applied when shipments were made under its uniform live-stock contract, and the other, a higher rate, used

when shipments were made without such contract, whereby the shipper became subject to the liability imposed by the common law and the federal and state statutes applicable thereto; that at the time of the shipment aforesaid these rates were evidenced by appellant's rate sheets, or tariffs, filed with the Interstate Commerce Commission and published according to law; that appellee was entitled to ship at either of said rates and then and there did ship at the lower rate, in compliance with the conditions of appellant's uniform live-stock contract, or at thirteen cents per hundredweight for 42,000 pounds, amounting to $54.60; that appellant, on January 16, 1912, the day of the shipment, was ready and willing to issue such uniform live-stock contracts but appellee failed to call for them at the freight office in the city of Muncie, Indiana, at which office he made his request for cars, and did not call therefor until March 15, 1912, when appellant's agent issued to him three of such contracts, one for each carload of stock shipped, which he then signed under the name and style of Web Jordan, copies of which contracts are made parts of the answer, and dated January 16, 1912; that prior thereto there had been a long course of dealings between the two parties as carrier and shipper of live stock and all of appellee's shipments were made at the lower freight rate and subject to the terms and conditions of the aforesaid contracts which were well known to appellee; that it had been the custom and practice of appellee to call at the freight office at Muncie, Indiana, after the shipment of live stock and procure said contracts; that he lived about six miles from Muncie and appellant for a long time prior to January 16, 1912, had permitted him to ship without such contracts or any receipt or bill of lading and to procure the contract afterwards as an accommodation to him; that appellee accepted the aforesaid contracts, which provide that, in case of unusual delays "caused by the negligence of the said carrier or its employes or its connect-

ing carrier, or their employes or otherwise, the shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained," and also provide that no claim for damages shall be allowed or paid unless a verified claim therefor shall be made in writing and delivered to the general claim agent of the carrier at his office in Richmond, Virginia, within five days from the time the stock is removed from the cars; that the shipper shall see that all doors and openings in the cars are kept closed so as to prevent the escape of any of the live stock and the carrier shall not be liable for the escape of any of the stock so shipped or for loss from overloading, crowding, kicking, goring, suffocating, fright, or from fire, heat, cold, or changes of weather; that appellee failed to so make and present his claim within five days for any of the damages he now seeks to recover in this action, by reason whereof appellant is not liable for any of the sheep that were missing or for any of the damages alleged.

To this answer a reply of general denial was filed, and a special reply in which it was alleged that the contracts relied upon were executed without any consideration. There was also filed a paragraph which alleges in detail all the facts of the shipment and the subsequent transactions and, among other things, alleges that appellee was ready and willing to pay and did pay the full and reasonable freight charges demanded by appellant for such shipment, and no option was given him of shipping at a higher rate and he had nothing to do with fixing the rate of freight charged by appellant and did not at any time agree to ship at a lower rate and limit appellant's liability in any respect whatever; that appellant did not, on January 16, 1912, when said sheep were shipped, issue to appellee any receipt or bill of lading therefor; that on March 15, 1912, appellee demanded of appellant a receipt or bill of lading for the

live stock so shipped and appellant failed and refused to issue the same and did not do so, but instead thereof issued the aforesaid contracts and refused to issue any other receipt or bill of lading for said shipments and then procured appellee's signature thereto, all without any consideration therefor; that appellee did not accompany the sheep to Chicago, nor did any one in his behalf, and appellant at the time knew that such was the case and then and there undertook to take care of the sheep during transportation and it was the duty of appellant to care for, feed and water the sheep; that the provisions of said contracts relied on are in extremely fine print, were not read by, or known to appellee at the time, and his attention was not called thereto by appellant or its agents; that said provisions were and are illegal, unreasonable, against public policy, fraudulent and void; that appellee did not undertake to feed, water, or care for the sheep, or look after the cars during the time of the shipment, nor did he at any time agree to relieve appellant from liability for its negligence, or the negligence of its employes or connecting lines, nor from liability for any of the causes or reasons alleged and based on said contracts so issued after the shipments were made as aforesaid.

While the sufficiency of the affirmative paragraphs of reply to the second paragraph of answer is not presented by appellant's briefs, and questions relating thereto are thereby waived, nevertheless we have deemed it necessary to state the substance of those pleadings as a means of comprehending and deciding the questions presented under the assignment that the court erred in overruling appellant's motion for a new trial.

The first proposition urged under this assignment is that the verdict of the jury is not sustained by sufficient evidence, for the reason that the complaint proceeds on the theory of a common-law liability for violation of a parol contract of shipment and the uncontradicted evidence

shows the shipment was made under the written contract set out in appellant's special answer. Many of the general propositions advanced in support of this contention are beyond dispute and need not be discussed because they are supported by authority. *Walker* v. *Larkin* (1890), 127 Ind. 100, 26 N. E. 684; *Snow* v. *Indiana, etc., R. Co.* (1887), 109 Ind. 422, 426, 9 N. E. 702; *Stewart* v. *Cleveland, etc., R. Co.* (1898), 21 Ind. App. 218, 226, 52 N. E. 89; *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 469, 88 N. E. 680.

Notwithstanding the federal statute, common carriers may make contracts whereby they limit and define the extent of liability against them under specified conditions,

4. but they cannot, by contract, relieve themselves from liability for damages caused by their negligence or the negligence of their employes. *Wabash R. Co.* v. *Priddy* (1912), 179 Ind. 483, 494, 101 N. E. 724; *Adams Express Co.* v. *Croninger* (1913), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

Reference is made to the act of 1905 (§3918 *et seq.* Burns 1914, Acts 1905 p. 58) relating to the practice in suits against common carriers of freight for damages resulting from failure to safely transport property delivered to such carriers for shipment. This act has been held to be valid and constitutional. *Cleveland, etc., R. Co.* v. *Blind* (1914), 182 Ind. 398, 419, 105 N. E. 483. But the case at bar does not depend upon its provisions. Where the shipments

5. are interstate, the state law is superseded by the federal statute on the subject as to all questions of liability or defenses covered by the statute and applicable

6. to any given case, but this does not interfere with the jurisdiction of the state courts, for the federal law is a part of the law of the state, and in suits of the character here involved the state courts may apply such law and give the relief warranted by the law and the facts. As already shown the complaint counts on a common-law liability.

The special answer sets up facts to show that the shipment was not only interstate, but that the nature and extent of appellant's liability was fixed by a special contract duly entered into and binding on both the carrier and shipper. The answer shows that the contract was not actually executed until about two months had expired after the shipment was made. To connect the contract with the shipment the answer avers an established custom between the parties by which shipments were made without any receipt, bill of lading or contract in writing being delivered to the shipper and whereby subsequent to such shipments appellee executed and accepted contracts identical with those under which it is alleged these shipments were made.

One paragraph of reply to the answer alleged no consideration and another sets out the details of the transaction and charges that on March 15, 1912, appellee demanded the issuance of a bill of lading or receipt for the sheep so shipped by him on January 16, 1912, and appellant refused to issue the same and would not and did not do so, but instead thereof issued the special contracts set up in the answer, which were then so issued without any consideration and without any knowledge on the part of appellee as to the provisions relied on by appellant to defeat his recovery of damages sustained by the alleged negligence and want of care in making such shipment.

Under these pleadings several issuable questions of fact were presented to the jury for decision, among which were the following: (1) Was the shipment made in pursuance of the special contract? (2) Does the evidence conclusively show the custom alleged in the answer? (3) Did appellee demand the ordinary receipt or bill of lading used in such shipments, and did appellant refuse to issue the same and give appellee no choice but to accept the special contract limiting liability as alleged in the answer? The answer to the first question is necessarily dependent upon the second

question, for, in the absence of such custom, the shipment in January, without any bill of lading, receipt or contract in writing issued to appellee by appellant, would be wholly disconnected from the issuance and acceptance of the contract in March subsequent to such shipment, and would therefore be without consideration since it is not claimed to rest upon any other consideration than that of the shipment of the stock and payment of the freight in January. Without the establishment of such custom the evidence fails to show the meeting of the minds of the contracting parties upon the alleged contract and appellant would fail in the defense alleged in its special paragraph of answer. The general verdict is a finding in appellee's favor of

8. every issuable fact, and is conclusive on all questions where there is any evidence tending to support the finding.

There is testimony tending to show that appellee ordered the cars from appellant's freight agent by telephone and that the agent agreed to furnish them; that when

9. the sheep were loaded on January 16, appellee reported to the agent, over the telephone, the cars and number of sheep in each car and their destination; that rates were not mentioned and nothing was said or done at the time about a receipt, bill of lading or special contract in writing; the freight was paid at Chicago but appellee was not present and had nothing to do therewith; that the sheep were shipped under a verbal arrangement; that on March 15, 1912, at the request of his attorney, appellee called upon appellant for a bill of lading for the sheep shipped in January and the agent of appellant refused to give it to him but offered him the special contracts set out in the answer and said he would not give him such contracts unless he signed them; that he then signed them without reading them or knowing their contents; that on a few occasions when he shipped fat hogs to eastern markets he had accepted special contracts but

procured them at the time the shipments were made; that
he "always got the contracts at the time he shipped the
stock, except the one shipment of sheep" now in con-
troversy; that he shipped live stock from Medford, about
six miles from Muncie, and in some instances, obtained
bills of lading at Muncie after the shipments were made
and sometimes when they were made; that he had never
read one of the special contracts, did not know their pro-
visions and appellant's agents did not at any time call
his attention thereto; that neither appellee, nor any one
in his behalf accompanied the shipment to Chicago and
appellant knew such was the case at the time of the ship-
ment.

There is little if any evidence tending to prove the
alleged custom and the proof fully sustains the finding
that there was no established custom as alleged in the
answer.

Furthermore, in answer to interrogatories, the jury in
substance found the following: That there was no established
custom between the parties by which appellee executed
special contracts as alleged after shipments of live stock
had been made to Chicago; that at the time of the ship-
ment in controversy nothing was said about rates; and
appellee was not offered his choice of two rates; that
appellee demanded of appellant a bill of lading on March
15, after the shipment in January and appellant refused
to issue it; that appellee received no consideration from
appellant for signing and accepting the three uniform
live-stock contracts on March 15, 1912; that there was no
written or printed instrument in existence which con-
tained the exact terms of the agreement under which the
sheep of appellee were shipped to Chicago; that no part
of the damages allowed appellee were for delay in fur-
nishing cars at Medford, Indiana. On this state of the
record the finding of the jury may be sustained on the
theory that the special answer was not established because

of the failure to prove the alleged custom, and likewise that the special contracts relied upon by appellant. were executed without consideration and therefore not binding on appellee. The answers to the interrogatories show that such was the theory upon which the jury found its verdict, and that nothing was allowed for delay in furnishing cars before the shipment was actually made as alleged in the first and second paragraphs of complaint; and therefore that the judgment rests upon the third paragraph of the complaint for damages due to appellant's negligence in failing to care for and make timely delivery of the sheep at Chicago. Futhermore, it is the rule of the law in this state that if a bill of lading 10. is not furnished the shipper until after the goods are fully accepted by the carrier under an oral agreement, the bill of lading constitutes no part of the contract, and the oral agreement controls. *C. F. Adams Co.* v. *Helman* (1914), 58 Ind. App. 394, 106 N. E. 733, and cases cited.

The findings and conclusions already announced make it unnecessary for us to consider in detail several questions suggested by appellant relating to the instruc- 11. tions, the alleged failure of the jury to fully and fairly answer certain interrogatories, the admission of certain evidence and certain questions relating to shipping rates, for the reason that appellee could not have been harmed by any ruling of the court so complained of, unless it appeared that the jury might have arrived at its verdict on the theory that the shipments were made in pursuance of the provisions of the special contracts, since all of the questions referred to relate to such contracts, and could only be available to assist appellant on the theory that appellee was bound by the contracts. Having expressly found to the contrary, and it clearly and conclusively appearing from the record that the verdict was based on a finding that the alleged custom did not exist and that

the shipments were not made under the alleged contracts set up in the answer, the rulings of the court aforesaid, even if erroneous, could not have influenced the verdict or in any way have deprived appellant of any substantial right. Furthermore, if the record did not conclusively show that the verdict was reached on the theory above stated, and we were required to view the question from the standpoint of such contracts, the general verdict is a finding that appellee was given no choice and was compelled to ship under the provisions of the contracts, or not at all, in which event appellant would be liable for the damages under the common law. *Toledo, etc., R. Co.* v. *Milner, supra.*

On the whole record a correct result seems to have been reached, and we find no intervening error that will warrant a reversal. Judgment affirmed.

NOTE.—Reported in 114 N. E. 461. Carriers: (a) "Carmack amendment" as affecting state regulations limiting liability of common carriers, notes, 44 L. R. A. (N. S.) 257; 50 L. R. A. (N. S.) 819; (b) limitation of carrier's liability for injury to or loss of goods as affected by Interstate Commerce Act, Ann. Cas. 1912B 672, 1915D 612, 7 Cyc 421; (c) jurisdiction of state courts of an action for damages for violation of the Interstate Commerce Act, 4 Ann. Cas. 773; (d) state regulation as to shipment of live stock or goods as interference with interstate commerce, Ann. Cas. 1917A 973; (e) contract of carriage, supplementing of, by proof of collateral oral agreement, Ann. Cas. 1914A 458; (f) duties of, in carriage of live stock, 63 Am. St. 548. See under (4) 6 Cyc 394; (5) 7 Cyc 421.